UNITED STATES of America,
Plaintiff–Appellee,

v.

Angel FERNANDEZ–ANGULO,
Defendant–Appellant.

No. 87–3068.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 6, 1988.

Decided Dec. 15, 1988.

**1450**

Paul S. Petterson, Asst. Federal Public Defender, Portland, Or., for defendant-appellant.

Charles H. Turner, U.S. Atty., Kenneth C. Bauman, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

\* The Honorable William D. Keller, United States District Judge for the Central District of California, sitting by designation.

Before HALL and O'SCANNLAIN, Circuit Judges, and KELLER,\* District Judge.

KELLER, District Judge:

Defendant Angel Fernandez–Angulo (Fernandez) appeals the sentences imposed following his guilty plea on both counts of a superseding indictment. Fernandez was charged with two violations of 21 U.S.C. § 841(a)(1) (1982): distributing heroin (Count I) and possession with intent to distribute heroin (Count II). Fernandez contends that the district court improperly sentenced him to two concurrent five year terms to be followed by two concurrent three year special parole terms. Execution of the sentence as to Count II was suspended and Fernandez was placed on probation for five years. Fernandez argues that these sentences are multiplicitous under *United States v. Palafox*, 764 F.2d 558 (9th Cir.1985) (en banc). Fernandez also challenges his sentence based upon the district court's failure to comply with Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure. We affirm the sentence but remand for compliance with Rule 32.

## FACTUAL AND PROCEDURAL BACKGROUND

This case is the product of a commercial narcotics relationship between defendant Fernandez, a Mexican national, and Sergio Diez (Diez), an informant acting on behalf of the Salem Police Department and the Drug Enforcement Administration (DEA). Following two instances wherein defendant sold to Diez relatively small quantities of cocaine, Diez proposed to Fernandez a considerably larger drug transaction. On April 10, 1987, the two men discussed a purchase from Fernandez of 12 to 16 ounces of heroin and a kilogram of cocaine. They agreed that the exchange would take place a few days later.

At approximately 6:00 p.m. on the evening of April 16, 1987, Fernandez arrived at Diez's residence for the purpose of consummating the transaction. At that meeting, Fernandez provided Diez with a one-half ounce sample of cocaine and a one ounce sample of heroin. After Diez accepted the samples, Fernandez left in order to obtain the quantity of heroin and cocaine that was to be supplied. During Fernandez's absence, Diez provided the samples to law enforcement officials so that they could be field tested.

Approximately three hours later, Fernandez returned with five and one-half ounces of heroin and one kilogram of cocaine. Diez then left Fernandez at his residence, ostensibly to meet with his money source. In reality, Diez met with officers of the Salem Police Department and advised them of the type and quantity of drugs Fernandez had brought. The officers told Diez to call Fernandez and arrange to complete the deal at a nearby motel. Fernandez refused Diez's telephonic suggestion and ordered him to return within ten minutes or else the deal would be cancelled. When Diez was late returning with the money, Fernandez left. It was approximately 10:20 p.m.

Police quickly confronted Fernandez as he departed. He was subdued and arrested in a nearby parking lot a short time after attempting to flee. The cocaine and heroin were found secreted on his person.

In a two count complaint, Fernandez was charged with possession of heroin with intent to distribute and possession of cocaine with intent to distribute, both in violation of 21 U.S.C. § 841(a)(1)[1]. A plea agreement resulted in a two count superseding indictment charging the defendant with distribution of heroin (Count I) and possession of heroin with intent to distribute (Count II).

Fernandez pled guilty to both counts. As to Count I, the district judge imposed a prison term of five years to be followed by a three year special parole term. She then pronounced an identical sentence as to Count II which was to run consecutively with the sentence for Count I. However, execution of the sentence relating to Count II was suspended and defendant was instead placed on probation for five years subject to two special conditions: (1) if deported, defendant was not to return to the United States without permission; and (2) if defendant should reenter the United States during the probationary period, he must notify the United States Parole Commission, the Probation Office, and the United States Attorney. In addition, defendant was ordered to pay a $50.00 fee assessment on each count pursuant to 18 U.S.C. § 3013 (Supp. IV 1986).

## DISCUSSION

### I. Standard of Review

Sentencing is an issue normally reserved solely for the sound discretion of the district court. *United States v. Messer*, 785 F.2d 832, 834 (9th Cir.1986). However, the legality of a sentence is a question of law and thus is reviewed *de novo*. *United States v. Arbelaez*, 812 F.2d 530, 532 (9th Cir.1987) (per curiam); *United States v. Fowler*, 794 F.2d 1446, 1449 (9th Cir.1986), *cert. denied*, 479 U.S. 1094, 107 S.Ct. 1309, 94 L.Ed.2d 153 (1987).

### II. Multiplicity of Possession and Distribution Sentences

In *United States v. Palafox*, 764 F.2d 558, 562 (9th Cir.1985) (en banc), an en banc panel of this Court held that when a defendant is charged with multiple offenses which originate from a single, isolated drug transaction, punishment for such offenses may not be compounded. Relying on this decision and its progeny, Fernandez contends that the district judge erred by sentencing him on both the possession with intent to distribute and distribution counts of the superseding indictment.[2]

---

1. According to 21 U.S.C. § 841(a)(1), (a) ... it shall be unlawful for any person knowingly or intentionally—

   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance....

2. It is important to bear in mind that the issue

In addressing defendant's contention, it is important to begin by noting the precise facts involved in *Palafox* and its exact holding. During a meeting between Palafox and an undercover agent, at which Palafox was to sell roughly 125 grams of heroin, the agent asked for a small sample. After the agent removed a 0.12 gram sample from the package and returned the package to Palafox, government agents moved in and arrested Palafox. Palafox was subsequently charged with distribution of the 0.12 gram sample and possession of the remaining quantity with the intent to distribute it. *Id.* at 559.

Confronted with these particular facts, the Court concluded that separate punishment would not be appropriate. After acknowledging that Congress clearly intended to criminalize and punish all aspects of drug trafficking,[3] the Court focused on what it considered to be an analogous situation: the Supreme Court's interpretation of the Federal Bank Robbery Act of 1934, 18 U.S.C. § 2113 (1982), *amended by,* 18 U.S.C. § 2113(a) (Supp. IV 1986), in *Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957). The Court concluded that the Supreme Court's determination that section 2113 precluded multiple sentences was persuasive authority that Congress must have had a similar intent when it enacted section 841(a)(1). *Palafox,* 764 F.2d at 561–62.

In *Prince,* the Supreme Court could find "no indication that Congress intended ... to pyramid the penalties[ ]" of the separate offenses of robbery and acts falling just short of completed robbery. *Prince,* 352

U.S. at 327, 77 S.Ct. at 406. As viewed by the *Palafox* court, *Prince* held that Congress did not intend to compound the mandated twenty year sentence for bank robbery with an additional twenty year sentence for the initial entry into the bank. *Palafox,* 764 F.2d at 561–62. *Palafox* found that such reasoning "should apply" to this type of multiple violation of section 841(a)(1) as well, especially in view of similar holdings in other circuits. *Id.* at 562. The Court also distinguished *United States v. Mehrmanesh,* 682 F.2d 1303 (9th Cir. 1982), in which there had been a proffer of a sample followed several hours later by delivery of the remainder to a different person and at a different place, as involving separately punishable acts. *Palafox,* 764 F.2d at 559.

The precise holding of *Palafox* was that "where the defendant distributes a sample and retains the remainder for the purpose of making an *immediate* distribution to the *same* recipients at the *same* place and at the *same* time, verdicts of guilty may be returned on both counts but the defendant may be punished on only one." *Id.* at 560 (emphasis added) (footnote omitted). As perceptively recognized by Judge Poole in his dissent, that decision was bound to raise difficult questions. This case presents one such difficulty: "[m]ust both parties actually contemplate a lightning-fast wrap-up?" *Id.* at 569 (Poole, J., dissenting). Stated differently, this Court is called upon to give meaning to *Palafox*'s reference to "same time" and the extent to which a difference of several hours between the distribution of the sample and

---

presented is what unauthorized uses of controlled substances Congress intended to punish. We are not here concerned with the question of whether the double jeopardy clause prohibits separate convictions for the delivery of a sample prior to the consummation of a narcotics transaction. *See generally North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed. 2d 656 (1969) (double jeopardy clause precludes, *inter alia,* multiple punishments for the same offense). Defendant concedes, as he must, that he has been properly charged with two separate offenses. *See Palafox,* 764 F.2d at 560–61. Nevertheless, cases in which a defendant challenged his conviction under section 841(a)(1) on double jeopardy grounds will be relevant to our analysis, for such cases will also

have confronted the issue before us in addition to determining whether the acts supporting the conviction constitute the "same offence" within the meaning of the double jeopardy clause. *See* U.S. Const. amend. V.

3. *Id.* at 560. As this Circuit recognized in *Palafox,* the provisions of the Comprehensive Drug Abuse Prevention and Control Act of 1970, § 401, 21 U.S.C. § 841(a)(1) (1982), and its legislative history, evince "the strong congressional intent to criminalize all aspects of drug trafficking," including punishing both distribution and possession with intent to distribute. *Palafox,* 764 F.2d at 560.

consummation of the underlying transaction should, if at all, outweigh the fact that the transaction involved the same people and occurred at the same place.[4]

To date, this Circuit has been called upon to explicate and apply the *Palafox* holding on nine occasions. In four instances, we viewed the decision as directly controlling. On five other occasions, *Palafox* was deemed to be inapposite.

In *United States v. Touw*, 769 F.2d 571 (9th Cir.1985), defendants, after producing $117,000 for 300 pounds of marijuana, were arrested and charged with conspiracy to possess marijuana and attempted possession of marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a) and 846. The dual sentences imposed by the district court were vacated because the defendants were "engaged in a single act when they attempted to purchase marijuana from DEA agents." *Id.* at 574.

The next case to invalidate multiple sentences was *United States v. Wilson*, 781 F.2d 1438 (9th Cir.1986) (per curiam). There, the defendant undertook to manufacture the controlled substance phencyclidine (PCP). The two-step manufacturing process involved converting piperidine to an intermediate compound known as PCC and then to PCP. Wilson was convicted of and sentenced for possession of piperidine with knowledge that it would be used to manufacture PCP, manufacturing PCC, and attempting to manufacture PCP. *Id.* at 1438–39. Wilson's challenge to the consecutive sentences prevailed because "the only evil associated with piperidine [and PCC] is that chemical's use in making PCP." *Id.* at 1439. Citing *Palafox*, we held that "successive steps of one criminal undertaking"—the manufacture of PCP— should be punished as one offense. *Id.* at 1440. Seemingly, this holding represents a broadening of *Palafox*. However, as discussed *infra*, this language is unique to this particular fact situation and cannot be construed as expanding *Palafox*.

Even more recently, while vacating multiple sentences, this Court indicated that *Palafox* was only intended to limit multiple punishment to singular instances of sustained conduct. Thus, in *United States v. Arbelaez*, we vacated a multiple sentence for aiding and abetting possession and aiding and abetting distribution because "Arbelaez's *single act* of giving Beron [a cohort] three kilograms of cocaine produced two convictions ..." even though "Arbelaez's role was limited to the *one act* of giving Beron three kilograms of cocaine." *Id.*, 812 F.2d at 533 (emphasis by court).

Similarly, in *United States v. Andersson*, 813 F.2d 1450 (9th Cir.1987), we overturned consecutive sentences for possession of 21 kilograms of cocaine with intent to distribute and distribution of 4 kilograms of cocaine. In that case, the defendants, while in possession of 21 kilograms of cocaine, distributed a 4 kilogram portion as a sample with the intent of completing the sale of the 21 kilograms to an informant promptly after receiving the purported customer's approval. This scenario was deemed indistinguishable from *Palafox* because it involved "a distribution of a sample and *retention of the balance* of the drug *to be sold immediately* upon the approval of the sample." *Id.* at 1460 (emphasis added).

Consistent with the purposely narrow, fact-specific holding of *Palafox*, multiple sentences have been held to be appropriate whenever a transaction could not be characterized as a single act. Thus, in *United States v. Rodriguez–Ramirez*, 777 F.2d 454 (9th Cir.1985), this Court found that distribution of two samples of heroin followed two days later by an attempted sale of the amount transacted for could support concurrent sentences for both distribution of the sample and possession with intent to distribute the bulk of the heroin. *Id.* at 457–58.

Later, in *United States v. McQuisten*, 795 F.2d 858 (9th Cir.1986), a case involving the manufacture of methamphetamine, we

---

**4.** This question differs from the one addressed in *Mehrmanesh*. There, distribution of the sample occurred in a different city and the remain-

der was given to a different individual. *See Mehrmanesh*, 682 F.2d at 1305.

addressed McQuisten's challenge to concurrent sentences for conspiracy to manufacture and attempt to manufacture the drug. In affirming the district court, it was stated that "[h]ere we do not have one transaction occurring at the same place and time and between the same participants as in *Palafox*. Nor do we have merely successive steps in one criminal undertaking as in *Wilson*. Rather, we have several distinct criminal acts." *Id.* at 868. A second batch of methamphetamine in the process of being manufactured at the time of the arrest constituted the second act which properly formed the basis for the attempt conviction. *See id.*

As in the narcotics cases previously discussed, the defendant in *United States v. Wolf*, 813 F.2d 970 (9th Cir.1987), challenged his separate punishment for transporting in foreign commerce a motor vehicle known to be stolen, in violation of 18 U.S.C. § 2312 (1982), and for possessing the same van while transporting it across a United States boundary. *See* 18 U.S.C. § 2313 (Supp. IV 1986). Wolf's invocation of *Palafox* was rejected because the proof of possession in *Palafox* "was limited to a *momentary period of time* necessary to commit an additional statutory offense...." *Wolf*, 813 F.2d at 977 (emphasis added). Because the driving time between Coronado, California and Ensenada, Mexico should only have taken "a couple of hours or so," and because in fact three days had elapsed between the time of Wolf's theft and his apprehension in Mexico, it was concluded that Wolf had indeed committed two separate offenses. *Id.* at 978. The Court arrived at this conclusion because "Wolf's illegal possession of the van extended well beyond the time necessary to complete the offense of transporting the van in foreign commerce." *Id.*

In *United States v. Safirstein*, 827 F.2d 1380 (9th Cir.1987), this Circuit upheld multiple sentences for willfully making a false statement in violation of 18 U.S.C. § 1001 (1982) and attempting to transport more than $10,000 in monetary instruments outside the United States in violation of 31 U.S.C. § 5316(a)(1)(A) (1982 & Supp. III 1985). The panel found that Congress intended to permit punishment under both statutes. Significantly, the opinion also stated that the reasoning of *Palafox* and *Wilson* was inapposite because the defendants in those cases "could not possibly have committed the ultimate act without having also committed the predicate act." *Id.* at 1384.

This Court's latest exposition of the limitations of *Palafox* appeared in *United States v. Palacios*, 835 F.2d 230 (9th Cir. 1987). In that case, the defendant challenged on double jeopardy grounds his conviction for possessing counterfeit currency and for passing counterfeit currency in violation of 18 U.S.C. § 472 (1982). The conviction and sentence were permitted to stand because Palacios only attempted to pass 44 of 90 counterfeit bills in his possession. Palacios' actions were distinguishable from those of the defendant in *Palafox* because Palacios did not "make the bank teller aware that he intended to pass the remaining 46 counterfeit bills as part of the passing of the 44 counterfeit bills...." *Id.* at 233–34. Moreover, Palacios did not even disclose that he had more counterfeit currency in his possession. *Id.* at 234.

At the heart of these nine cases, as well as *Palafox* itself, is the fundamental proposition that singular acts should not result in multiple sentences. According to *Palafox*, the singularity of an act is to be gauged by reference to time, place, and persons involved in the distribution of a sample and the attendant retention of the balance. Indeed, in order to emphasize the limited scope of its holding, the Court stated no less than three times that identity of time, place, and participants was essential. *See Palafox*, 764 F.2d at 560, 562 & 563.

The *Wilson* court's reference to "successive steps of one criminal undertaking"[5] in a narcotics manufacturing process is factually unique and thus cannot be said to enlarge the limited applicability of *Palafox*, for otherwise *Wolf*, *McQuisten*, and *Rodriguez–Ramirez* would have been decided in-

---

5. *Wilson*, 781 F.2d at 1440.

correctly. When stripped of its drug manufacturing context, the "successive steps approach conflicts with *Palafox* because it renders the factors of time, place, and participants irrelevant. This is so because the transfer of a sample would be merely one step in the criminal undertaking of distributing a larger quantity of drugs. It would not matter to whom, when, and where the sample was given because the only important "criminal undertaking" would be the ultimate distribution and not the incipient act of providing a sample.

The basic tenet of the *Palafox* decision is that when one has in his possession a quantity of drugs and then distributes a portion as a sample, it follows inexorably that he must retain the remainder for some duration of time, however short that may be. That retention is not a separate act when the individual intends to turn over the remainder immediately upon receiving the buyer's approval. Rather, it is a part of one and only one action. The only time this would not be true, as *Palafox* recognized, would be if the balance were retained with the intention of distributing it to others. *Id.* at 563. In that event, there would indeed be more than one act.

■ Accordingly, as we view the carefully crafted and restrictive holding in *Palafox*, multiple punishments are prohibited only "where the defendant distributes a sample and *retains the remainder* for the purpose of making an *immediate* distribution to the same recipient at the same place *and* at the same time...." *Id.* at 560 (emphasis added). Whenever a possession charge arises from any action by a defendant other than the passive, momentary retention of a quantity of drugs after the distribution of a sample, dual punishments may be imposed.

■ In view of the foregoing analysis, the concurrent sentences for both distribution and possession with intent to distribute

imposed by the district court were entirely appropriate. First, Fernandez did not distribute the one ounce sample of heroin and retain five and one-half ounces pending acceptance by Diez. Instead, he provided Diez with an *additional* five and one-half ounces of which the sample was not a part. Second, Fernandez left the informant's residence in order to obtain the additional quantity and returned after approximately three hours had passed. Fernandez therefore did not retain the additional heroin at the time he distributed the samples. Either of these two facts is sufficient to justify dual punishment.[6]

III. *Compliance with Fed.R.Crim.P. 32(c)(3)(D)*

Prior to the sentencing hearing, Fernandez submitted a sentencing memorandum which incorporated letters to the probation officer and the district judge disputing two assertions in the presentence report: (1) that Fernandez had previous experience with drug related transactions, and (2) that he had initiated the transaction with Diez in this case. In his letter to the district judge, Fernandez also expressly stated that "[p]ursuant to Rule 32(c)(3)(D), Fed.R.Crim. Pro., we request findings and determination [sic] of the controverted matter." The letter to the probation office was attached as an addendum to the presentence report.

Rule 32(c)(3)(D) provides:

If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be ap-

---

**6.** In addition, when Fernandez attempted to flee with the heroin and cocaine, he may have possessed those drugs with the intent to distribute them at a later date either to Diez or to someone else. If true, this would constitute a third basis for imposing a dual sentence. However, because this post-flight possession was not the subject of the possession charge in the case *sub judice*, we may not invoke this possibility as further support for our decision that Fernandez was properly sentenced.

pended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission. Fed.R.Crim.P. 32(c)(3)(D).

As this rule makes abundantly clear, a sentencing judge is required to perform two tasks when faced with a defendant's challenge to any portion of a presentence report. First, the judge must (a) make a finding concerning the controverted information *or* (b) make a determination that such a finding is not necessary because the controverted matters will not be considered in sentencing. Second, the judge must append to the presentence report a written record of the court's findings or determinations.

The written record required by Rule 32(c)(3)(D), as this Court has previously noted, may consist of a copy of the defendant's objections and the portion of the sentencing transcript indicating the court's decision not to consider the controverted matters. *See United States v. Travis,* 735 F.2d 1129, 1132–33 (9th Cir.1984). Alternatively, a district court can satisfy this Rule merely by appending to the report a form on which it has entered its findings or determinations. *See United States v. Ibarra,* 737 F.2d 825, 828 n. 2 (9th Cir.1984) (quoting Fed.R.Crim.P. 32(c)(3)(D) advisory committee's note). These are simply examples and we do not suggest that they are the only way to comply with Rule 32(c)(3)(D).

The purpose of Rule 32(c)(3)(D) is to ensure that a record is made regarding the resolution of the controverted matter and that the record comes to the attention of the Parole Commission or the Bureau of Prisons. Fed.R.Crim.P. 32(c)(3)(D) advisory committee's note. Because of the unfairness to a defendant if prison or parole officials rely on false allegations or uncorrected reports, strict compliance with Rule 32(c)(3)(D) is required and failure to comply will result in the case being remanded. *Messer,* 785 F.2d at 834; *United States v. Petitto,* 767 F.2d 607, 610 (9th Cir.1985). In addition, adherence to the rule eliminates the uncertainty in determining what

the trial court relied upon when making its sentencing decision, thereby facilitating appellate review. *Id.*

As we have previously stated, a district court should "explicitly state for the record either its finding regarding the challenge, or its decision not to take the matter controverted into account when imposing sentence. By adhering to this modest requirement, the district courts can help reduce unnecessary appeals based on the parties' misunderstanding of the record." *Ibarra,* 737 F.2d at 827–28 (footnote omitted).

During the sentencing hearing, the district judge declared her belief that this case was the defendant's first narcotics offense. Implicit in the statement, although not expressly articulated, is that the judge disregarded this first dispute when imposing the sentence. Although not as explicit as might otherwise be desired, the district court's decision not to consider the defendant's alleged prior experience with narcotics was sufficiently unambiguous to satisfy Rule 32(c)(3)(D). *Compare Ibarra,* 737 F.2d at 827 (upholding sentence where district judge stated, " 'What difference does it make what she [the agent] concluded? Anyone can conclude anything they want[,]' " and " 'One says he [Ibarra] did. One says he didn't. That's all it is.' "), *and United States v. Gonzales,* 765 F.2d 1393, 1397 (9th Cir.1985) (finding compliance with Rule 32 where district judge stated that he " '[d]iscount[ed] completely the two events that occurred while [Gonzales was] on parole that were dismissed[ ]' "), *cert. denied,* 474 U.S. 1068, 106 S.Ct. 826, 88 L.Ed.2d 798 (1986), *with United States v. Edwards,* 800 F.2d 878, 882–83 (9th Cir.1986) (finding statement of district judge regarding Edward's activity as a major figure in a cocaine conspiracy to be insufficient because the judge "appears simply to have been pointing out that the government attorney could not speak for the court concerning what was 'known' about Edwards[ ]").

However, there is no indication that a written record of the district court's determination to treat this transaction as the defendant's first narcotics offense was at-

tached to the presentence report. There is also no indication that either a factual finding or a determination of nonconsideration was made and the appropriate written record attached to the presentence report regarding defendant's second contention that he did not initiate this drug deal.[7] These uncertainties require that this case be remanded in order to ensure compliance with Rule 32(c)(3)(D). *United States v. Sharon,* 812 F.2d 1233, 1234 (9th Cir.1987); *Travis,* 735 F.2d at 1133.

Once a case has been remanded for compliance with Rule 32(c)(3)(D), however, the district court need not conduct a resentencing hearing or resentence the defendant. Although language in some of our previous cases may have suggested that a remand for resentencing is required, *see, e.g., Petitto,* 767 F.2d at 611, these cases did not deal explicitly with the range of permissible procedures for curing a Rule 32 violation. In fact, we have approved procedures that did not involve resentencing, holding that a district court may take other appropriate steps to correct a Rule 32 violation. For example, in *United States v. Salas,* 824 F.2d 751, 753 (9th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 465, 98 L.Ed.2d 404 (1987), we held resentencing to be unnecessary where the district judge stated during a Rule 35 hearing that he did not rely on the controverted matter in imposing the sentence and ordered that the Bureau of Prisons and the Parole Commission attach a transcript of those statements to the presentence report.

The holding of *Salas* applies with equal force where a district judge merely states in a subsequent order that he or she did not rely on any disputed allegations when im-posing a sentence and ensures that a written record is appended to the presentence report. There is no need for a defendant to be present. Where the defendant is incarcerated a fair distance from the court, this option will alleviate several practical difficulties such as the cost of transportation and the risk of flight.

One need not fear disingenuous, *post hoc* rationalizations by a district judge because, as we have previously stated, "[w]e must take [a district court's] statements at face value because if we do not do so, we will have abandoned our reliance on the good faith of our district court judges." *Gonzales,* 765 F.2d at 1397. *See also Farrow v. United States,* 580 F.2d 1339, 1350 (9th Cir.1978) (en banc) ("We must trust that our judges will rise above [impermissible] influence—just as we are confident they do in cases of racial or personal bias, or public or private pressure...."). If the district judge is confident that the disputed assertion; played no role whatsoever in the sentencing decision, he or she must only make sure that the Bureau of Prisons and the Parole Commission are aware of that fact in order to satisfy Rule 32(c)(3)(D).

## IV. Conclusion

We affirm the sentences imposed by the district judge but remand in order to ensure compliance with Rule 32.

AFFIRMED IN PART; REMANDED IN PART.

---

**7.** It is appropriate to note at this juncture, in what is obviously *obiter dictum,* this writer's view of the inherent unfairness of the procedural structure crafted by Congress in Rule 32(c)(3)(D). Indeed, it may be argued that the Rule effectively frustrates the congressional intent of preventing controverted matters from influencing decisions by the Bureau of Prisons and the Parole Commission.

The Rule demands that the defendant flag what will often be particularly damning, albeit certainly controverted, actions. The challenged statements in the presentence report are then further highlighted when the written record is forwarded with the report to the penal institution and is later made available to parole and probation officials. Though I do not in any way challenge the integrity of those who keep our penal system functioning, if the goal is to avoid improper consideration of controverted allegations, it is seemingly more sensible simply to have the district judge strike from the presentence report any controverted material which he or she does not consider when determining the appropriate sentence.

Judges Hall and O'Scannlain do not join in this footnote.