892 F.2d 84
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald James SIERRA; James William McCallum; Michael G.
Santos; and Raymond Perez-Castillo, Defendants-Appellants.
 Nos. 88-3140, 88-3141, 88-3144 and 88-3226.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 14, 1989.
Decided Dec. 11, 1989.
 
 Before EUGENE A. WRIGHT, WALLACE and THOMPSON, Circuit Judges.
 
 MEMORANDUM
 
 1
 Sierra, McCallum, Santos, and Perez-Castillo were convicted in district court on charges stemming from participation in a cocaine distribution conspiracy. Each timely appeals, alleging various irregularities in the collection of evidence and the conduct of the trial. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part, and remand in part.
 
 
 2
 * A.
 
 
 3
 Sierra argues that evidence, $68,000.00 in cash, seized by the officers at the Sea-Tac Airport should have been suppressed because the officers did not have reasonable suspicion to detain him. Sierra also argues that the officers did not have sufficient fear for their own safety or for that of the public to frisk him for weapons. We review the motion to suppress, including the determination of reasonable suspicion, de novo. United States v. Erwin, 803 F.2d 1505, 1509-10 (9th Cir.1986).
 
 
 4
 The officers had before them the following facts: a single, male passenger without luggage, arriving in Seattle from Miami and staying only a short time, who bought his return ticket with cash, and who appeared nervous and anxious about surveillance while waiting to return to Miami. Under United States v. Sokolow, 109 S.Ct. 1581, 1586 (1989), the officers had a reasonable suspicion that Sierra was involved in drug trafficking and thus were entitled to detain and question him.
 
 
 5
 During the questioning, the officers noticed a bulge under Sierra's shirt. The officers immediately conducted a pat-down search. The officers had reasonable suspicions that Sierra was linked with drug trafficking. See id. Drug traffickers are routinely armed. The bulge under Sierra's shirt resembled one made by a weapon. The officer entertained an objectively reasonable suspicion that Sierra was armed and posed a threat to his safety. Thus, the officer was constitutionally entitled to conduct a pat-down search. When the search revealed unidentifiable "hard objects" under Sierra's shirt, the officer was further entitled to ask Sierra to lift his shirt, so the officer could determine whether the hard object was in fact a weapon. The hard objects turned out to be $68,000.00 in cash, wrapped in duct tape.
 
 
 6
 We conclude that the officers acted reasonably, and that the motion to suppress was properly denied. United States v. Post, 607 F.2d 847, 851-52 (9th Cir.1979).
 
 B.
 
 7
 Sierra argues that the trial judge impermissibly limited defense counsel's cross-examination of Perez-Martin. The district judge sustained objections to cross-examination of Perez-Martin about 12 times on three bases: asked and answered; irrelevant; and argumentative. We review for an abuse of discretion. United States v. Feldman, 788 F.2d 544, 554 (9th Cir.1986).
 
 
 8
 Despite numerous objections, Judge Tanner allowed defense counsel to probe Perez-Martin's credibility and motives. Perez-Martin admitted to using three to five grams of cocaine per day. Defense counsel tried unsuccessfully to raise the figure to four to six grams per day. The district judge sustained objections to further questions in this vein as already asked and answered. Cross-examination revealed that Perez-Martin had difficulty remembering incidents specifically from this period in his life. Perez-Martin admitted that his drug habit affected his ability to remember exactly what contacts and transactions he made with Sierra. The district judge would not permit defense counsel to repeat questions about memory lapses or to probe irrelevant material.
 
 
 9
 The record supports a conclusion that the defense mounted a vigorous and sustained cross-examination. The jury had sufficient evidence of Perez-Martin's drug habit and its effect on his recollection to appraise the credibility of the witness. United States v. DeLuca, 692 F.2d 1277, 1282 (9th Cir.1982). We find no abuse of discretion.
 
 
 10
 Sierra also contends that the district court abused its discretion by limiting cross-examination regarding Perez-Martin's alleged welfare cheating. Perez-Martin was cross-examined at length with respect to his past criminal record and his ulterior motives for cooperating with the government. Under the circumstances, the judge allowed adequate cross-examination of the witness. Id.
 
 C.
 
 11
 Sierra, McCallum, and Santos argue that Judge Tanner abused his discretion by refusing to admit expert testimony about the effects of drug abuse on memory. The decision whether to admit or exclude expert testimony is left to the broad discretion of the trial court, and we will not reverse such a decision absent an abuse of discretion. United States v. Barnard, 490 F.2d 907, 912-13 (9th Cir.1973), cert. denied, 416 U.S. 459 (1974).
 
 
 12
 The district court excluded the proposed testimony of Dr. Halpern after finding that it would not assist the jury in determining issues in the case, that the jury was capable of making credibility judgments, and that Halpern's testimony would be confusing and misleading. Halpern had never examined or talked to any of the government witnesses involved. Thus, his testimony would have been even more speculative and hypothetical than expert testimony we have previously held properly rejected. See id.; United States v. Rohrer, 708 F.2d 429, 434 (9th Cir.1983). Under the circumstances, there was no abuse of discretion.
 
 D.
 
 13
 Sierra and Santos charge the district court with error for admitting currency, drugs, firearms, and a ledger recording drug sales seized during a search of the residence of Grady, an unindicted co-conspirator. Initially, the appellants argue that the cocaine and guns were not relevant or connected to the conspiracy charged in the government's indictment. Secondly, they argue that the ledger of drug transactions is hearsay, and does not fall within the co-conspirator exception to the hearsay rule. We review a trial court's ruling on the admissibility of evidence for abuse of discretion. United States v. Savinovich, 845 F.2d 834, 836 (9th Cir.), cert. denied, 109 S.Ct. 369 (1988).
 
 
 14
 The government introduced substantial independent evidence linking Sierra, Santos, and Grady in a cocaine distribution scheme. Much of this evidence came from Perez-Martin. On appeal, Sierra and Santos do not contest the existence of a trafficking conspiracy, but argue that according to the indictment the conspiracy terminated sometime in April 1987. Because the search of Grady's residence did not occur until June 6, 1987, they argue that the government cannot connect them with the evidence discovered on that date.
 
 
 15
 This argument clearly fails with regard to the weapons, currency, and drugs. These items are relevant to show the existence of a distribution conspiracy. Id. at 836-37. The evidence is relevant even though found in the residence of a co-conspirator. United States v. Crespo de Llano, 830 F.2d 1532, 1544 (9th Cir.1987). The duration of the conspiracy charged does not confine the admissibility of otherwise relevant evidence. United States v. Testa, 548 F.2d 847, 852 (9th Cir.1977). We therefore find no abuse of discretion in admitting evidence of the drugs, weapons, and currency.
 
 
 16
 The admission of the ledger was also proper. Fed.R.Evid. 801(d)(2)(E) allows admission of the hearsay statements of co-conspirators "when a foundation is laid to show that (1) the declaration was in furtherance of the conspiracy, (2) it was made during the pendency of the conspiracy, and (3) there is independent proof of the existence of the conspiracy and of the connection of the declarant and the defendant to it." United States v. Lutz, 621 F.2d 940, 946 (9th Cir.) (Lutz ), cert. denied, 449 U.S. 859 (1980), quoting United States v. Weiner, 578 F.2d 757, 768 (9th Cir.) (Weiner ), cert. denied, 439 U.S. 981 (1978). This is a factual determination which we review for clear error. United States v. Zavala-Serra, 853 F.2d 1512, 1514 (9th Cir.1988) (Zavala-Serra ), citing Bourjaily v. United States, 483 U.S. 171, 182 (1987) (Bourjaily ).
 
 
 17
 Here, it is uncontested that a conspiracy between Sierra, Santos, and Grady has been established. However, defendants argue that by the terms of the indictment, this conspiracy terminated "around April 1987." Because the ledger refers to transactions occurring after this date, and was apparently prepared in June 1987, Sierra and Santos argue that it cannot be a statement made during the course of and in furtherance of the charged conspiracy.
 
 
 18
 Sierra and Santos err in assuming that the indictment governs the applicability of Fed.R.Evid. 801(d)(2)(E). Rather, it is evidence of a conspiracy which determines the application of this rule, irrespective of whether any conspiracy charge is included in the indictment. Lutz, 621 F.2d at 946-47; Weiner, 578 F.2d at 768; United States v. Fried, 576 F.2d 787, 793 (9th Cir.), cert. denied, 439 U.S. 895 (1978).
 
 
 19
 Hafner and Harris each testified to receipts of cocaine from Grady shortly before the search of Grady's residence. The ledger on its face reflects "Payments to Mr. Lynch" from April 22 to June 6. Thus, the evidence demonstrated an ongoing conspiracy until at least June 6, 1987. Sierra and Santos were shown to have conspired with Grady, and the recording of transactions in the ledger is obviously in furtherance of a drug distribution conspiracy. It was not clear error for the district court to find facts establishing a Rule 801(d)(2)(E) exception. The ledger was therefore properly admitted.
 
 II
 A.
 
 20
 McCallum argues that the district court erroneously chose federal law to govern the validity of the search warrant used to search his residence. "The admissibility of evidence in federal court is governed by federal rather than state standards." United States v. Chavez-Vernaza, 844 F.2d 1368, 1373 (9th Cir.1988). The evidence seized by the officers from McCallum pursuant to a search warrant was therefore properly admitted without regard to Washington state law.
 
 B.
 
 21
 McCallum argues that the warrant authorizing the search of his residence did not permit the seizure of money found inside his briefcase. The warrant extended only to drugs and drug "trafficking paraphernalia." The district court found that money is included in the term "paraphernalia," and alternatively that the money was properly seized under the "plain view" doctrine. We review de novo, United States v. Robertson, 833 F.2d 777, 783 (9th Cir.1987), and affirm the latter determination.
 
 
 22
 The validity of the warrant to enter and search the residence is uncontested. In executing such a warrant, agents may search all items, including separate closed containers, which legitimately might contain the objects specified in the warrant. United States v. Disla, 805 F.2d 1340, 1346 (9th Cir.1986) (Disla ). The warrant authorizing a search of McCallum's residence for cocaine, paraphernalia, and documents clearly permitted the officers to search the briefcase later found to contain the currency. Under the circumstances, the probable evidentiary value of the currency was obvious. United States v. Bernal, 719 F.2d 1475, 1478 (9th Cir.1983). McCallum does not contend otherwise.
 
 
 23
 McCallum argues, however, that because the officer instructed McCallum to open his suitcase, the discovery of the money was not "inadvertent." That the suitcase was opened intentionally, rather than accidentally, does not mean that the resulting discovery was not "inadvertent." To open purposefully the suitcase in a search for cocaine may still result in the "inadvertent" discovery of the money. Disla, 805 F.2d at 1346.
 
 
 24
 An "inadvertent" discovery occurs when an officer does not have reason to believe that he will find a specific item at a particular place until he actually sees it. Texas v. Brown, 460 U.S. 730, 737 (1983). In this case, there is no evidence of preexisting knowledge of this currency in McCallum's residence. We therefore conclude that the plain view doctrine is satisfied, and that the currency was properly admitted as evidence even if it was not covered by the warrant.
 
 C.
 
 25
 McCallum alleges that the district court violated his sixth amendment right to process by refusing to subpoena witnesses from New York and Las Vegas at government expense to aid his defense. See Fed.R.Crim.P. 17(b). "A motion under Rule 17(b) is addressed to the sound discretion of the trial court, and a defendant does not have an absolute right to subpoena witnesses at government expense." United States v. Sims, 637 F.2d 625, 629 (9th Cir.1980). Three elements are necessary to overturn the trial court's decision: (1) timely filing of notice under Rule 17(b); (2) that the evidence is "necessary to an adequate defense"; and (3) that defendant does not have financial means to pay for the subpoena and the witnesses' appearance. Id. The second requirement is the contested issue before us.
 
 
 26
 McCallum stated in his Rule 17(b) motion that the witnesses would testify to McCallum's gambling habits and thus show that the money found in McCallum's residence might have come from gambling rather than drugs. McCallum did not state where, when, or how he won this money. He did not claim that the witnesses would provide specific information as to his winnings--only that they would testify as to his general activities. Such testimony would have been of very limited probative value. Moreover, it would have been cumulative. Cummings, a co-conspirator called as a government witness, testified on cross-examination that he knew and personally observed McCallum to be a high-stakes gambler. The refusal by the district court to issue a subpoena under Rule 17(b) "is clearly appropriate ... when the testimony sought is cumulative." Id.
 
 
 27
 Under these circumstances, we find McCallum's averment that the witnesses were "necessary to an adequate defense," see Fed.R.Civ.P. 17(b), to be incredible on its face. Judge Tanner did not abuse his discretion in denying the motion.
 
 D.
 
 28
 McCallum next challenges the admission at trial of evidence of a prior identification of McCallum as a participant in the conspiracy. At the grand jury hearing, the government's witness, Larizza, had identified McCallum from a photograph as the man to whom he delivered cocaine. At trial, Larizza was unable to identify McCallum in court. Judge Tanner then allowed the government to introduce evidence of Larizza's prior identification, ostensibly as impeachment evidence.
 
 
 29
 McCallum challenges the grand jury identification as "impermissibly suggestive" and raising a "substantial likelihood of irreparable misidentification." See Simmons v. United States, 390 U.S. 377, 384 (1968). We do not find it necessary to resolve the suggestiveness issue. Even if the admission of Larizza's pretrial identification was error, the error was "harmless beyond a reasonable doubt." See Harrington v. California, 395 U.S. 250, 252 (1967) (Harrington ). Evidence derived from an impermissibly suggestive identification procedure is harmless if other evidence establishing the contested identification is "overwhelming." United States v. Stubblefield, 621 F.2d 980, 983 (9th Cir.1980).
 
 
 30
 Larizza testified that he went to Bellingham at Santos's request, that he arranged the trip by telephone, and that he delivered a kilogram of cocaine and returned. This testimony was largely uncontested, and much of it was corroborated by the testimony of Pulitano. Thus, the only issue is whether McCallum can be identified as "Jim in Bellingham."
 
 
 31
 Evidence independent of Larizza identifies McCallum as "Jim." It is uncontested that McCallum resides in Bellingham. Lawrence testified as to her mutual acquaintances with, and cocaine distributions among, McCallum, Santos, Karis, and Schoenbechler. She testified that McCallum had identified Santos as in the cocaine business, and that McCallum had delivered cocaine to her on several occasions. Perez-Martin testified that during the latter part of 1986, after the arrests of Karis and Larizza, he assumed the job of distributing cocaine to Santos's customers. He further stated that McCallum was a kilogram-level customer of Santos.
 
 
 32
 Moreover, physical evidence linked McCallum with Larizza's trip to Bellingham. Soon after Larizza's journey, agents searched Larizza's apartment and seized a drink coaster bearing McCallum's initials and numbers indicating a purchase of one kilogram of cocaine. The agents also found in Larizza's car an address book containing McCallum's telephone number. McCallum's telephone records show 52 calls to a pager used to contact Santos. Karis, Pulitano, Nathan, Clasen, and Grady, all members of the conspiracy, contacted Santos through the same pager. On June 9, 1986, the day Larizza delivered the cocaine to "Jim in Bellingham," the records show telephone calls to McCallum from Nathan's apartment (where Larizza was staying) and from Pulitano's apartment. Consistent with Larizza's testimony that "Jim" had called Santos to confirm that he was not to make a full payment for Larizza's cocaine, McCallum's telephone records show a call from his telephone to Santos's beeper on June 9, 1986.
 
 
 33
 Thus, not only did other co-conspirators identify McCallum as a cocaine-dealing associate of Santos, but telephone records from three different residences show calls linking Larizza, Santos, and McCallum on the date Larizza delivered the cocaine. McCallum offered no evidence undercutting this presentation. On this record, we conclude that the evidence identifying McCallum as "Jim in Bellingham" is overwhelming, and that admission of Larizza's prior identification, even if erroneous, was harmless.
 
 III
 A.
 
 34
 Santos argues that the district court improperly admitted hearsay testimony by an investigating officer. The officer testified to a statement inculpating Santos, made to the officer by co-conspirator and co-defendant Nall. Santos was denied the opportunity to confront the declarant because Nall did not testify and was later acquitted.
 
 
 35
 Hearsay statements of co-conspirators are admissible under Fed.R.Evid. 801(d)(2)(E). Santos argues that the statement was not made in furtherance of the conspiracy. We review the district court's implicit factual determination as to whether the statement was made in furtherance of the conspiracy for clear error. Bourjaily, 483 U.S. at 182; Zavala-Serra, 853 F.2d at 1515.
 
 
 36
 Nall admitted to dealing drugs after his father was kidnapped. He told the officers that he was a middleman in a half-million dollar cocaine deal, and agreed to allow the officers to monitor his telephone calls. During this monitoring Nall received (but did not answer) a call from a cellular telephone. Nall told the officer that it was probably Santos, a longtime friend who was not involved in the drug deal. The jury could infer from the statement that Santos was in fact calling about drugs. The district court found that Nall said Santos was uninvolved in the drug deal in order to conceal the conspiracy from detection, and thus Nall's statement perpetuated the ongoing conspiracy with Santos. This was not clear error.
 
 
 37
 Because Nall's statement falls within an exception to the hearsay rule, its admission does not violate the confrontation clause. Hence, there is no error under Bruton v. United States, 391 U.S. 123 (1968).
 
 B.
 
 38
 Santos challenges the admission of the testimony of Alfieri, his ex-attorney, over his claims of attorney-client privilege. The trial court's ruling on the scope of the attorney-client privilege involves mixed questions of law and fact and is reviewed de novo. Tornay v. United States, 840 F.2d 1424, 1426 (9th Cir.1988) (Tornay ). "The burden is on the party asserting the attorney-client privilege to demonstrate how the information [in question] fits within it." United States v. Hirsch, 803 F.2d 493, 496 (9th Cir.1986).
 
 
 39
 The government offered Alfieri's testimony to prove Santos's connection to Karis in the conspiracy. Santos requested that Alfieri interview Karis after the latter was interrogated by the police. Alfieri testified that Santos was concerned that Karis's confession had implicated Santos.
 
 
 40
 Santos's communication with his attorney did not encompass any legal advice. Alfieri was merely performing an investigative service. This service does not require special skills or privileged communications as does legal advice. Thus, the information does not merit attorney-client privilege. Tornay, 840 F.2d at 1426.
 
 
 41
 Santos argues that the government must establish an exception to the attorney-client privilege by means independent of the communication itself. Even if this contention were correct, the government did offer independent evidence of the attorney's testimony. Karis testified as to the content of Alfieri's contact with him.
 
 
 42
 It was not error to admit Alfieri's testimony.
 
 C.
 
 43
 Co-conspirator Harris testified that co-conspirator Grady said that Santos was the supplier of cocaine. The government argues that any objection to this hearsay evidence was fatally tardy. A two-sentence delay in raising the objection does not render it untimely. Thus, we review the judge's decision to admit hearsay over an objection for an abuse of discretion rather than plain error. United States v. Cowley, 720 F.2d 1037, 1040 & n. 1 (9th Cir.1983).
 
 
 44
 Even if the district judge abused his discretion in admitting the hearsay statement, the testimony was harmless. Harris himself testified to numerous circumstances linking Santos and Grady. Moreover, Karis and Perez-Martin identified Santos as Grady's supplier from direct personal knowledge. Admitting Harris's cumulative identification was not prejudicial. See Harrington, 395 U.S. at 252.
 
 E.
 
 45
 The jury returned guilty verdicts against Santos as to both the continuing criminal enterprise charge and the lesser included offense of conspiracy. The district court imposed a sentence for the former only. Santos argues that, because the jury was instructed to consider conspiracy only if it acquitted Santos on the greater charge, the verdict amounts to an implied acquittal for the continuing criminal enterprise charge. He thus asserts that his sentence on the greater count violates double jeopardy. See Price v. Georgia, 398 U.S. 323, 327 (1976).
 
 
 46
 Santos's argument ignores the fact that the jury returned an unequivocal verdict of guilty on the greater charge. This case is thus distinct from Price, where the jury verdict made no reference to the greater charge. Id. at 324. We have on two occasions considered cases in which juries returned verdicts of guilty on both continuing criminal enterprise and conspiracy charges. In both instances we held that the proper result is to enter a sentence for the greater offense only. United States v. Burt, 765 F.2d 1364, 1368 (9th Cir.1985); United States v. Smith, 690 F.2d 748, 750 (9th Cir.1982). These decisions govern us. A motion for a mistrial was properly denied.
 
 F.
 
 47
 Santos argues unpersuasively that 35 years without parole is cruel and unusual punishment. We have earlier rejected a similar argument based on a life sentence for the same offense. United States v. Stewart, 820 F.2d 1107 (9th Cir.), cert. denied, 108 S.Ct. 192 (1987); United States v. Valenzuela, 646 F.2d 352, 354 (9th Cir.1980). There was no eighth amendment violation here.
 
 IV
 A.
 
 48
 Perez-Castillo asserts that he was denied effective assistance of counsel because his attorney was forced to proceed in spite of a conflict of interest. Effective assistance of counsel is a question of law reviewed independently. United States v. Signori, 844 F.2d 635, 638 (9th Cir.1988).
 
 
 49
 Perez-Castillo's attorney, Steinborn, alerted the court to a possible conflict on the first day of trial. Steinborn stated that he previously had an attorney-client relationship with a government witness, Keating, who would possibly testify against Perez-Castillo. Judge Tanner excused Steinborn, but required his associate, Carbone, to remain on the case. If an attorney has a conflict, his partners and associates are deemed to have the same conflict by the Washington Rules of Professional Conduct § 1.10(a). Perez-Castillo asserts that Judge Tanner erred in compelling Carbone to remain on the case.
 
 
 50
 We do not reach the question of whether a conflict existed. On the first day of trial, prior to Keating taking the stand, Perez-Castillo pled guilty. He thus waived his right to cross-examine Keating, and any conflict arising out of such cross-examination was rendered moot.
 
 
 51
 Alternatively, Perez-Castillo argues that the trial judge did in fact dismiss Carbone, and forced Perez-Castillo to proceed unrepresented. To the contrary, Carbone's request to be excused was specifically denied. After Perez-Castillo expressed displeasure and spoke directly to the court, Judge Tanner instructed Perez-Castillo on the implications of self-representation, recommending against that choice. He then proceeded with Perez-Castillo as if Perez-Castillo was represented by Carbone. Judge Tanner directed Perez-Castillo to discuss his change of plea with Carbone. Carbone stated specifically to the court on several subsequent occasions that he continued to represent Perez-Castillo. The record simply does not support a conclusion that Perez-Castillo was unrepresented. Perez-Castillo was at all times represented by Steinborn and, after his dismissal, by Carbone.
 
 B.
 
 52
 In advising Perez-Castillo of the possible sentence that would arise from a guilty plea, the district judge failed to indicate that a mandatory five-year supervised release accompanied each conviction under 21 U.S.C. §§ 841 & 846. Failure to inform the defendant of the supervised release period is a violation of Rule 11. United States v. Sharon, 812 F.2d 1233, 1235 (9th Cir.1987) (Sharon ). The district judge therefore erred in omitting this aspect of the potential sentence.
 
 
 53
 Nevertheless, Perez-Castillo's conviction cannot be overturned on this ground, for he can show no prejudice stemming from the omission. United States v. Sanclemente-Bejarano, 861 F.2d 206, 210 (9th Cir.1988); see also United States v. Rivera-Ramirez, 715 F.2d 453 (9th Cir.1983), cert. denied, 467 U.S. 1215 (1984). The district judge informed Perez-Castillo that he could be sentenced to three consecutive fifteen year terms for the offenses charged. The sentence actually imposed by the court put Perez-Castillo in jail for 25 years, plus a supervised release of 5 years. Therefore, the error could not have materially affected Perez-Castillo's guilty plea.
 
 C.
 
 54
 At his presentencing hearing, Perez-Castillo contested statements in the presentence report as to the amount of cocaine being dealt, and as to Perez-Castillo's willingness to distribute cocaine between 1985 and 1987. Judge Tanner refused to hear any of Perez-Castillo's proffered testimony, and made no findings with respect to Perez-Castillo's challenges. Perez-Castillo contends that this constitutes reversible error.
 
 
 55
 Fed.R.Crim.P. 32(c)(3)(A) requires that, if factual matters in a presentence report are controverted, the court must "make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing." Here the district court did neither. "Strict compliance with [Rule 32] is required and 'failure to comply will result in remand.' " Sharon, 812 F.2d at 1234, quoting United States v. Edwards, 800 F.2d 878, 880-81 (9th Cir.1986). We do not reach Perez-Castillo's claim that he was improperly denied a hearing; rather, we remand to the district court for an explicit finding pursuant to Rule 32(c)(3)(A). United States v. Petitto, 767 F.2d 607, 611 (9th Cir.1985), cert. denied, 108 S.Ct. 1748 (1988).
 
 
 56
 Our law is unclear whether on remand the district court may simply provide a Rule 32(c)(3)(A) finding, or whether it must vacate Perez-Castillo's sentence and hold a new sentencing hearing. This issue is currently before an en banc court in United States v. Fernandez-Angulo, 863 F.2d 1449 (9th Cir.1988) (argued en banc Aug. 16, 1989). We do not express an opinion on this point, but remand for proceedings consistent with the outcome in Fernandez-Angulo.
 
 V
 
 57
 We remand Perez-Castillo's sentencing for further proceedings consistent with this opinion and with the decision of the en banc court in United States v. Fernandez-Angulo. We affirm all convictions in all other respects.
 
 
 58
 AFFIRMED IN PART; REMANDED IN PART.
 
 
 59
 Note: This disposition is not appropriate for publication and may not be cited to or by the Courts of this Circuit except as provided by Ninth Circuit Rule 36-3.