**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Douglas R. KERR,
Defendant–Appellant.**

No. 88–3070.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 11, 1989.

Decided June 8, 1989.

Stephen R. Sady, Chief Deputy Federal Public Defender, Portland, Or., for defendant-appellant.

Frank Noonan and Stephen F. Peifer, Asst. U.S. Attys., Portland, Or., for plaintiff-appellee.

Before SCHROEDER, POOLE and NELSON, Circuit Judges.

POOLE, Circuit Judge:

Douglas Kerr appeals from his conviction for manufacturing and possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841. Kerr challenges the district court's denial of his motion to suppress evidence seized from his premises. Kerr also challenges the sentence imposed by the district court.

## BACKGROUND

In April or May 1987, Officer Herbert Royster of the Oregon State Police received an anonymous telephone call which stated that appellant Douglas Kerr was engaged in a marijuana growing operation. The caller provided Kerr's address, a description of Kerr's premises and the following information:

1) Kerr was growing marijuana for profit in a detached barn or shed located on his property;

2) Kerr used children, including his own, to grow marijuana and distribute it to other children;

3) Kerr had threatened to use a fully automatic weapon against the children and their families if they reported his operation;

4) Kerr had been involved in an earlier marijuana growing operation with Charles McGee, who was arrested for growing marijuana in 1985.

The informant also provided Royster with information pertaining to the McGee operation which, according to Royster, could only be known by a person who had firsthand knowledge of the Oregon State Police investigation of McGee. In addition, the informant pointed out a number of similarities between the Kerr and McGee growing operations.

Royster commenced an investigation of Douglas Kerr based upon the information supplied by the anonymous informant. Royster contacted the investigating officer in the McGee case and determined that the information provided by the anonymous caller was correct with regard to the investigation and arrest of Charles McGee.[1]

On June 19, 1987, Royster flew in an Oregon State Police aircraft over Kerr's residence. Royster took several photographs which showed a "detached shed-like structure" located adjacent to Kerr's main residence. Royster contacted the Clackamas County Tax Department and discovered that no building inspection had been performed on the house or detached shed. The inspector's report stated that no inspection could be performed due to the watchdogs located on the Kerr premises.

Royster next contacted two of Kerr's neighbors. Both neighbors informed Royster that they had heard rapid gunfire coming from Kerr's property. In addition, one neighbor stated that he had heard Mr. Kerr "loudly verbally abusing" his children on various occasions. On July 23, 1987, Royster entered one of the neighbor's premises and walked to the edge of Mr. Kerr's property. From his vantage point approximately 50 yards away from Kerr's shed, Royster heard the sound of a combustion motor engine from within the shed. Royster noticed that there were three vents on one side of the shed and that one vent had black, soot-like material adhering to it. Royster claimed that as the wind shifted, he could smell the odor of fresh marijuana coming from the direction of the shed. Royster also stated that Kerr's neighbor reported smelling a "musty, earthy like smell" coming from the shed, which is consistent with the odor of fresh marijuana.

At 4:00 a.m. the next morning, Royster returned to the neighbor's property with an infrared sensing device. Royster was accompanied by Oregon State Forestry Officer Ron Lundblad who had used the infrared device to detect "hot spots" in forest fire fighting. The device detects heat emissions which appear to the viewer as bright, glowing spots in the viewer scope. Royster and Lundblad walked to the edge of Kerr's property and observed Kerr's shed through the infrared device. Royster noticed three bright spots where the vents were located (which were consistent with the exhaust produced by a combustion motor) and a darker color throughout the rest of the shed which indicated that the structure was well insulated. Royster believed that both pieces of evidence were incriminating because indoor marijuana growers often insulate their growing areas and frequently employ combustion engine generators to prevent detection of the high electrical consumption involved in growing marijuana.

The following day, Royster contacted a third neighbor who reported having heard rapid gunfire of varying caliber coming from Kerr's property. The neighbor also stated that there was an unusually large amount of vehicular traffic going to and from the Kerr residence and that he had observed Kerr forcing one of his children to perform demeaning actions when the child had failed to lock the access gate to the Kerr property.

Royster signed an affidavit setting forth the foregoing facts and submitted it to a Clackamas County Circuit Judge. The

---

**1.** Royster's affidavit in support of the search warrant goes into great detail concerning the McGee investigation. Royster stated that the investigating officer advised him that a confidential, reliable informant was used in the McGee investigation. The investigating officer told Royster that the informant had alleged that Kerr assisted McGee's operation and that Kerr himself was growing marijuana on his premises.

judge issued a warrant to search Kerr's premises and to seize marijuana, marijuana manufacturing equipment and distribution paraphernalia, documents of marijuana growing and distribution, and currency and other items of value.

On July 31, 1987, officers of the Oregon State Police and the United States Drug Enforcement Administration executed the warrant to search Kerr's premises. The officers seized over 1,200 growing marijuana plants, dried processed marijuana, various items of marijuana paraphernalia, and records relating to marijuana growing.

Kerr was indicted by a grand jury for manufacturing marijuana in violation of 21 U.S.C. §§ 841(a)(1) (Count One) and possessing marijuana with intent to distribute, also in violation of 21 U.S.C. § 841(a)(1) (Count Two). After the indictment, Kerr moved to suppress the evidence obtained in the July 31 search. Kerr claimed that the affidavit in support of the warrant did not provide probable cause to believe that marijuana would be found on his premises. The district judge held an evidentiary hearing and denied Kerr's motion to suppress. On January 4, 1988, Kerr entered a conditional plea of guilty to both counts charged in the indictment.

Prior to sentencing, Kerr filed a motion pursuant to Federal Rule of Criminal Procedure 32(c)(3)(A) controverting certain factual allegations contained in the presentence investigation report. Kerr's motion alleged that the presentence report incorrectly stated that Kerr had utilized children in his marijuana growing operation. Kerr requested a sentencing hearing which was held on March 8, 1988.

At the hearing, Royster testified that the only evidence concerning the use of children in Kerr's marijuana growing operation was that which was furnished by the anonymous informant. Based on this information, the district court found by clear and convincing evidence that Kerr had used children in his marijuana growing operation. The court disclaimed any reliance on this finding, however, stating that "the sentence I would achieve in this case would be the same whether I took that into ac-

count or not." The district court then imposed consecutive sentences of five years on Count One and three years on Count Two. The court also imposed concurrent special parole terms of five years. Kerr now appeals both the denial of his motion to suppress and the sentence imposed by the district court.

## DISCUSSION

### I. Infrared Inspection

█ Kerr contends that the infrared inspection of his premises constituted a warrantless search in violation of the Fourth Amendment. Kerr further asserts that, since the affidavit in support of the search warrant contained information obtained from the infrared inspection, all products of the subsequent search and seizure must be suppressed. Kerr is mistaken in his belief that the entire warrant is somehow "tainted" by the inclusion of illegally obtained evidence. Even if the infrared inspection did violate the Fourth Amendment, only the information which was obtained from the infrared inspection is properly excludable. Evidence which was obtained from sources other than the infrared inspection is not "fruit of the poisonous tree" and its exclusion is not warranted. *Segura v. United States,* 468 U.S. 796, 813–15, 104 S.Ct. 3380, 3389–91, 82 L.Ed.2d 599 (1984); *United States v. Vasey,* 834 F.2d 782, 788 (9th Cir.1987).

The infrared inspection yielded two pieces of evidence—the presence of both "hot spots" and insulation inside Kerr's shed. Royster stated that the "hot spots" indicated that a combustion engine was being operated inside the shed. However, Royster stated that, prior to conducting the infrared inspection, he heard the sound of a combustion engine coming from inside Kerr's shed. Therefore, the "hot spots" revealed by the infrared inspection merely duplicated earlier, independently obtained evidence.

The infrared inspection also revealed the presence of insulation inside the shed which, according to Royster, is frequently used by indoor marijuana growers. Al-

though this evidence was first discovered through the infrared inspection, it is of such slight probative value in relation to the other evidence contained in the affidavit that the probable cause determination is not affected by its inclusion. As a result, we express no opinion as to the legality of the infrared inspection.

## II. Probable Cause

The existence of probable cause depends upon whether the "totality of the circumstances" provides the issuing magistrate with a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed. 2d 527 (1983). The duty of this court is "to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)).

In *Gates*, the Supreme Court held that an anonymous informant's letter which was substantially corroborated by an independent police investigation provided a sufficient basis for the magistrate to determine that probable cause existed. The Court concluded that the corroboration of some of the details in the informant's letter increased the probability that the informant was correct about the remaining uncorroborated facts. *Id.* at 244, 103 S.Ct. at 2335; *see also United States v. Angulo–Lopez*, 791 F.2d 1394, 1397 (9th Cir.1986). The court further stated that the corroboration of otherwise innocent behavior may provide a basis for probable cause because the "relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Gates*, 462 U.S. at 244 n. 13, 103 S.Ct. at 2335 n. 13.

In the case before us, the information contained in the affidavit provided the magistrate with a substantial basis to conclude that probable cause existed. While the anonymous phone call, standing alone, does not amount to probable cause, *id.* at 227, 103 S.Ct. at 2326. Officer Royster's subsequent investigation provided ample corroboration as well as additional, incriminating evidence.

The informant's assertion that Kerr was involved in the Charles McGee marijuana growing operation was supported by the investigating officer in the McGee case. The officer confirmed that the informant's detailed description of the McGee operation was substantially correct. In addition, the officer stated that he had successfully used a reliable informant in the McGee case who had also alleged that Kerr grew marijuana on his premises. This information provides significant corroboration because the McGee informant's allegations are presumed to be trustworthy due to his accuracy in furnishing information involving the same type of criminal activity on earlier occasions. *Angulo–Lopez*, 791 F.2d at 1397.

Royster's investigation revealed several additional facts which, although relatively innocuous on their face, tend to corroborate the informant's story. Three of Kerr's neighbors stated that they had heard rapid gunfire coming from Kerr's premises. Royster noted that certain physical characteristics of Kerr's property were consistent with marijuana growing. Royster heard the sound of a combustion engine coming from within the shed and noticed that the shed was enclosed with the exception of a few vents, one of which had soot-like material adhering to it. While there is nothing inherently incriminating about the foregoing facts, they do create some suspicion in light of the initial tip. *Gates*, 462 U.S. at 243 n. 13, 103 S.Ct. at 2335 n. 13.

By far the most incriminating piece of evidence was the odor of marijuana emanating from Kerr's premises. Royster claimed that he could smell the odor of fresh marijuana coming from the direction of Kerr's shed. While it seems quite remarkable that the odor of fresh marijuana could escape through a small vent in an otherwise enclosed, well-insulated building, travel in excess of 50 yards over thick vegetation and still be detectable to the human nose, this court is not at liberty to disturb the credibility determinations made by the magistrate and the district court.

Because we cannot rule out the possibility that Royster may have actually smelled marijuana, we accept this evidence, albeit with some reluctance.

By detecting the odor of marijuana, Royster materially corroborated the informant's allegation that Kerr was growing marijuana. Moreover, the presence of the odor of contraband may itself be sufficient to establish probable cause. *See Johnson v. United States,* 333 U.S. 10, 13, 68 S.Ct. 367, 368, 92 L.Ed. 436 (1948) (odor of opium sufficient to establish probable cause); *cf. United States v. Tate,* 694 F.2d 1217, 1221 (9th Cir.1982) (because ether has legitimate uses, its odor, absent additional evidence, does not establish probable cause).

Even without the anonymous tip, the facts obtained through Royster's investigation strongly suggest that Kerr was engaged in marijuana growing. Because these facts substantially corroborate the information provided in the tip, the affidavit established at least a fair probability that marijuana would be found on Kerr's premises. Accordingly, we affirm the district court's denial of Kerr's motion to suppress evidence obtained during the July 31, 1987 search of his premises.

### III. Due Process at Sentencing

■ Kerr argues that the district court violated his due process rights by basing its sentence on the informant's allegation that Kerr used children in his marijuana growing operation. Although the district court specifically disclaimed any reliance on these statements in determining Kerr's sentence, the court did make findings of fact that Kerr used children in his marijuana operation. Kerr contends that the court's willingness to make findings of fact regarding the use of children suggests that it took this information into account in imposing Kerr's sentence. We review the district court's sentencing decision for an abuse of discretion. *United States v. Messer,* 785 F.2d 832, 834 (9th Cir.1986).

At sentencing, a district court may consider a wide variety of information which would not be admissible at trial. *Williams v. New York,* 337 U.S. 241, 251, 69 S.Ct. 1079, 1085, 93 L.Ed. 1337 (1949); 18 U.S.C. § 3661; Fed.R.Evid. 1101(d)(3). If the defendant challenges the information contained in the presentence investigation report, the district court must make findings of fact concerning any disputed matter upon which it proposes to rely in sentencing. Fed.R.Crim.P. 32(c)(3)(D). If a court relies upon information which is "materially false or unreliable ..., the defendant's due process rights are violated." *Messer,* 785 F.2d at 834 (9th Cir.1986) (citing *United States v. Ruster,* 712 F.2d 409, 412 (9th Cir.1983)).

Fed.R.Crim.P. 32(c)(3)(D) helps to ensure that due process is achieved at sentencing. *Messer,* 785 F.2d at 834. The rule requires that the court "must (a) make a finding concerning the controverted information *or* (b) make a determination that such a finding is not necessary because the controverted matters will not be considered in sentencing." *United States v. Fernandez–Angulo,* 863 F.2d 1449, 1456 (9th Cir.1988) (emphasis in original). The sentencing court is also required to append to the presentence report a written record of the findings and determinations. *Id.* This procedure is intended to ensure that an accurate record is made as to the resolution of the controverted matter and that the record comes to the attention of the Bureau of Prisons and the Parole Commission. Fed.R.Crim.P. 32(c)(3)(D) advisory committee's note (1983). Because of the manifest unfairness to a defendant if false or unreliable information is relied upon by the sentencing court, the Bureau of Prisons, or the Parole Commission, strict compliance with the rule is required. A court's failure to comply with Rule 32(c)(3)(D) will result in remand for resentencing. *Fernandez–Angulo,* 863 F.2d at 1456; *Messer,* 785 F.2d at 834.

By entering a finding that Kerr employed children in his marijuana growing operation *and* disclaiming any reliance on the finding, the district court failed to comply with Rule 32(c)(3)(D). Although the district court stated that it did not rely upon its findings of fact in determining Kerr's sentence, the findings nevertheless

**1446**

have serious consequences for Kerr. The finding that Kerr used children to grow marijuana is required to be appended to the presentence report. This information may be used by the Bureau of Prisons and Parole Commission to determine institution assignment as well as eligibility for treatment programs, furloughs and parole. *See* Fed.R.Crim.P. 32(c)(3)(D) advisory committee's note (1983). Due to the severity of the consequences which attach to the court's findings, we remand this case for resentencing.

On remand, the district court must comply with Rule 32(c)(3)(D) by *either* (i) making a finding that Kerr employed children in his marijuana growing operation *or* (ii) determining that no such finding is necessary because it will not be taken into account in sentencing. The court may not make a finding that Kerr employed children in his marijuana growing operation unless additional evidence is provided which demonstrates that children were so employed. The mere statements of an anonymous informant, standing alone, do not bear sufficient indicia of reliability to support a finding of fact by even a preponderance of the evidence. *See United States v. Weston,* 448 F.2d 626, 633–34 (9th Cir.1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972).[2]

The judgment of conviction is AFFIRMED, the sentence is VACATED, and the case is REMANDED for further proceedings not inconsistent with this opinion. *See Weston,* 448 F.2d at 634.

**2.** We reject the government's contention that because the informant provided correct information regarding Kerr's marijuana growing, his statements are sufficiently reliable to support the district court's findings. Although an informant's proven accuracy in supplying information may render his subsequent uncorroborated statements sufficiently trustworthy to establish probable cause, an uncorroborated, anonymous

allegation provides an insufficient basis to permit a finding of fact by a preponderance of the evidence. *Weston,* 448 F.2d at 633–34. Moreover, the police were unable to find any evidence that Kerr had used children in his marijuana operation despite an extensive investigation. Under these circumstances, the informant's assertions regarding Kerr's use of children are to be accorded little weight.