972 F.2d 1347
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Louis THIEDERMAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Curtis MAKI, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bonnie MAKI, Defendant-Appellant.
 Nos. 91-30308, 91-30324 and 91-30327.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 9, 1992.
Decided July 24, 1992.
 
 Before ALARCON, RYMER and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 James Maki, Bonnie Maki, and Louis Thiederman appeal their convictions on various methamphetamine charges, and Bonnie Maki appeals her sentence. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * Bonnie and James Maki argue that the search of their residence violated the Fourth Amendment because the search warrant affidavit did not provide a substantial basis for finding probable cause. They argue in addition that items found in the subsequent search of James Maki's truck should be excluded under the "fruit of the poisonous tree" doctrine.
 
 
 4
 A search warrant challenged for lack of probable cause will be upheld on appeal if the issuing judge had a "substantial basis" for concluding that probable cause existed. United States v. Castillo, 866 F.2d 1071, 1076 (9th Cir.1988). A judge may find probable cause supporting issuance of a warrant if the totality of the circumstances, as indicated in the affidavit accompanying the warrant application, demonstrates a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Kerr, 876 F.2d 1440, 1444 (9th Cir.1989). In assessing whether an informant's tip establishes probable cause, two significant features are whether the informant has supplied reliable information in the past and the extent to which the tip is corroborated by independent police investigation. See id.
 
 
 5
 The affidavit supporting the warrant to search the Maki residence indicated that an informant who had provided tips in the past that led to several arrests told police on December 14, 1990, that James Maki had left the Missoula area in order to obtain a load of methamphetamine; that upon Maki's return to Missoula, he would have ounces of methamphetamine for sale; and that Maki lived somewhere in East Missoula. Investigation of utility records and sheriff's intelligence files corroborated that Maki lived in East Missoula, at a residence owned by Bonnie Maki on 334 Montana Street. The sheriff's records also contained tips that Maki had sold cocaine at a truck stop (September 20, 1990), dealt large quantities of methamphetamine (August 1, 1990), purchased a pound of "pot" that he planned on selling, and dealt methamphetamine (March 5, 1990), and that he and Bonnie Maki had been seen in possession of approximately 5 ounces of cocaine (August 12, 1989). Because the tip reported in the affidavit was given by an informant who had furnished reliable information in the past and was corroborated by other information in police files, it created a "fair probability" that Maki would bring the methamphetamine to his residence and thus gave rise to probable cause to search it. See United States v. Dubrofsky, 581 F.2d 208, 213 (9th Cir.1978) (it is probable that heroin and evidence of distribution would be found at heroin importer's home).[1]
 
 
 6
 James Maki argues that the tips recorded in the sheriff's records were unreliable or stale. However, these tips did not themselves serve as the primary basis for probable cause; rather, the December 14, 1990 one did. The tips in the sheriff's records supported the December 14, 1990 tip by corroborating Maki's involvement in drug trafficking.
 
 
 7
 Maki next argues that he has a due process right to have unreliable hearsay in a search warrant application excluded from the totality of the circumstances assessment. Franks v. Delaware, 438 U.S. 154, 171-72 (1978), does not extend so far and we decline to so hold. See id. at 165 (probable cause can be founded on hearsay).
 
 
 8
 Maki argues that the informant's veracity was not established because the information supplied in the past led to arrests, not convictions, and was not sufficiently detailed or investigated. We have held that "[c]onvictions rather than arrests need not be alleged to support reliability." See United States v. Shipstead, 433 F.2d 368, 372 (9th Cir.1970). The tip did have some detail, and in combination with other information in the file sufficiently supported probable cause.
 
 
 9
 Finally, Maki argues that the district court's finding that the sheriff's intelligence information alone would not generate probable cause is inconsistent with its finding that the officers did not act in reckless disregard for the truth. We do not agree; there was no representation that the intelligence file tips alone would establish probable cause, or that the tips were investigated or independently verified.
 
 II
 
 10
 James Maki argues that the district court erred in denying his request to produce the sheriff's intelligence files pursuant to Fed.R.Crim.P. 26.2, on the ground that they were "statements" of the officers who testified at the suppression hearing. There was no abuse of discretion, United States v. Simtob, 901 F.2d 799, 808 (9th Cir.1990) (applying Jencks Act), because intelligence files are collections of informant tips, surveillance records, and investigatory notes by various law enforcement officials over time and are therefore not "statements" of individual officers. See id. at 809 (incomplete agent notes containing mix of witness testimony and investigator's interpretations are not "statements" for purposes of Jencks Act, which has substantially the same definition as Rule 26.2).
 
 III
 
 11
 Bonnie Maki and Thiederman argue that the district court should have declared a mistrial when the government offered a drug ledger it had not previously produced. Instead, the court granted a two-day continuance. In doing so, it did not abuse its discretion under Rule 16(d)(2). United States v. Balk, 706 F.2d 1056, 1060 (9th Cir.1983). A continuance is an available remedy for a failure to disclose, and there is no showing that having more time to analyze the ledger would have made a difference to the defense. See also United States v. Fulton, 549 F.2d 1325, 1328-29 (9th Cir.1977) (district court did not abuse its discretion in remedying government failure to disclose evidence by recessing trial in order to provide defendant time to prepare cross-examination).
 
 IV
 
 12
 Thiederman argues that the district court erred in allowing a government witness to testify that Thiederman's fingerprint was on a 600 millimeter beaker taken from a storage facility in Puyallup, Washington in June 1989, because the requirements of United States v. Miller, 874 F.2d 1255, 1268 (9th Cir.1989), for introduction of other act evidence under Fed.R.Evid. 404(b) were not met. We see no abuse of discretion, as there was sufficient evidence for the jury to find that Thiederman was manufacturing methamphetamine as of June 1989. The fingerprint was on a beaker found among glassware and chemicals associated with the manufacture of methamphetamine, Thiederman filed his first tax return in five years a month after learning of the 1989 search, and he spent some $90,000 from January to May of 1990. This evidence was relevant to show Thiederman's intent to manufacture methamphetamine in 1990. Intent was a disputed element, in that Thiederman's defense was that he thought he was manufacturing ephedrine. Nor did Thiederman show that the prejudicial impact outweighed probative value under Rule 403. To the extent an inference of committing other crimes arose, it is not impermissible character evidence because it bears on intent, and the district court gave a cautionary instruction that the defendants were on trial only for crimes charged in the indictment. The district court thus did not abuse its discretion under Rule 403. Miller, 874 F.2d at 1268.
 
 V
 
 13
 James Maki, Bonnie Maki, and Thiederman argue that the Assistant United States Attorney engaged in misconduct during the government's rebuttal to their closing argument, and that the district court erred in neither giving a limiting instruction nor taking other action to remedy the misconduct. Bonnie Maki and Thiederman also argue that the prosecutor improperly vouched for prosecution witnesses and expressed personal belief in the defendants' guilt. For this reason, they urge the district court should have ordered a new trial.
 
 
 14
 While the prosecutor may have been better advised to preface the offending paragraph of his argument with "as the evidence shows ...," viewing the remarks complained of in the context of the AUSA's argument as a whole does not lead us to conclude that improper vouching occurred. He had previously said a number of times that the jury's decision was to be based only on the evidence. The statements he made did not accredit any particular witness, or suggest any steps the government had taken to assure the witnesses' veracity. United States v. Wallace, 848 F.2d 1464, 1473 (9th Cir.1988) (quoting United States v. Roberts, 618 F.2d 530, 533 (9th Cir.1980)); Simtob, 901 F.2d at 805.
 
 
 15
 The Makis argue that the prosecutor's rebuttal was overly histrionic, diverted the jury from the proper issues in the case, and sought to inflame them into finding the defendants guilty merely because they were responsible for production of a harmful substance, even if unknowingly. Without condoning the trash-can theatrics, we cannot say they were so egregious that they probably affected the outcome of the case. United States v. Vaccaro, 816 F.2d 443, 451 (9th Cir.), cert. denied, 484 U.S. 914 (1987). Any distraction caused by the inflammatory remarks was cured by the district judge's instructions, which properly focused the jury's attention.
 
 
 16
 James Maki's argument that the district court erred in denying the defendants' second motion for a new trial because it based its decision on the erroneous belief that it had already ruled on the motion lacks merit, because the district court did rule on the first motion, made by all the defendants immediately after trial, and the second motion raised no new issues.[2]
 
 VI
 
 17
 Thiederman challenges the sufficiency of the evidence on all counts. We find it amply sufficient.
 
 
 18
 Both Thiederman and James Maki admitted engaging in a manufacturing process in Maki's garage and at the Nine Mile cabin. Thiederman claimed that he believed they were manufacturing ephedrine rather than methamphetamine, however, there were samples of methamphetamine in the Makis' house and garage, as well as materials typically used to manufacture methamphetamine. Bonnie Maki's "drug ledger" also indicated knowing distribution of methamphetamine. Thiederman was a passenger in James Maki's truck, in which several pounds of methamphetamine were found. His 1989 activities indicate that Thiederman knew methamphetamine was being produced in Maki's garage and in the Nine Mile cabin, and intended to produce it. This evidence adequately connects him to acetone used in the manufacturing process, and amounts to substantially more evidence than mere proximity to contraband. Cf. United States v. Ramirez, 880 F.2d 236, 239 (9th Cir.1989) (mere proximity could not support a conviction absent proof of circumstances demonstrating "participation" or "guilty knowledge and cooperation"). Finally, that Thiederman's hands were not stained and that his clothes did not smell does not suggest otherwise. Someone else could have mixed the methamphetamine, or Maki and Thiederman could have mixed it while wearing gloves and changed clothes afterward.
 
 VII
 
 19
 Last, Bonnie Maki argues that the ten-year mandatory minimum sentence required by 21 U.S.C. § 841(b)(1)(A)(viii) constitutes cruel and unusual punishment under the Eighth Amendment as applied to her, because she is a first offender, a mother of four children, and a defendant who had minimal involvement in the criminal enterprise. However sympathetic her circumstances, her sentence is not grossly disproportionate to the crime of manufacturing and distributing substantial quantities of methamphetamine. See Harmelin v. Michigan, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); United States v. Bland, 961 F.2d 123, 128-29 (9th Cir.1992); United States v. Hoyt, 879 F.2d 505, 512-14 (9th Cir.1989) (mandatory minimum ten years for first offender not cruel and unusual). There is no basis in the law for a downward departure based on her being a mother; and the record shows that Maki's participation was not minimal.[3]
 
 
 20
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We do not reach the government's argument that the police relied in good faith on facially valid warrants
 
 
 [2]
 Maki's further argument that the prosecutor's conduct was unconstitutional is not briefed and is therefore deemed abandoned. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir.1988) (issues not argued on appeal are abandoned absent manifest injustice)
 
 
 [3]
 Maki also suggests that her sentence violates due process and Article III. This circuit has rejected both types of challenge to the mandatory minimum sentences in 21 U.S.C. § 841(b)(1)(A). See United States v. Brownlie, 915 F.2d 527, 528 (9th Cir.1990) (defendant has no due process right to individualized sentencing that will bring his sentence below § 841(b)(1)(A) mandatory minimum); United States v. Kinsey, 843 F.2d 383, 393 (9th Cir.) (mandatory minimum sentences in § 841(b)(1)(A) do not remove discretionary power of sentencing judges so as to violate Article III separation of powers), cert. denied, 487 U.S. 1223 and 488 U.S. 836 (1988)