IN THE SUPERIOR COURT

**FILED**
March 17, 2023 11:38 AM
SX-2019-CR-00329
**TAMARA CHARLES**
**CLERK OF THE COURT**

**SUPERIOR COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

| | |
|---|---|
| PEOPLE OF THE VIRGIN ISLANDS, | |
| PLAINTIFF, | SX-2019-CR-329 |
| V. | |
| D'MAHRI CHARLES, | |
| DEFENDANT. | CITE AS: 2023 VI SUPER 7U |

**Appearances:**

**William Appleton, Esq.**
Virgin Islands Department of Justice
St. Croix, U.S. Virgin Islands
*For People of the Virgin Islands*

**Jeffrey Moorhead, Esq.**
Jeffrey B.C. Moorhead, P.C.
St. Croix, U.S. Virgin Islands
*For D'Mahri Charles*

## MEMORANDUM OPINION AND ORDER

**WILLOCKS, Senior Sitting Judge**

¶ 1    **THIS MATTER** is before the Court on Defendant Rasselah Caeser's (hereinafter "Caeser")[1] motion to suppress, filed on July 2, 2020, in criminal case number SX-2019-CR-328, which was joined by Defendant D'Mahri Charles' (hereinafter "Charles") in this instant matter, criminal case number SX-2019-CR-329. On August 11, 2020, the People of the Virgin Islands (hereinafter "People") filed its oppositions thereto.

---

[1] There is a discrepancy between the spelling of "Caeser" in the information and Caeser's filings—to wit, the information spelled it as "Caeser" while Caeser's filings spelled it as "Caesar." The Court will use the spelling used in the information Caeser since that is the initiating document and the spelling of the name was never amended.

This matter was subsequently dismissed without prejudice against Caeser.

## BACKGROUND

¶ 2    On November 21, 2019, the People filed a joint information against Caeser in case number

SX-2019-CR-328 and Charles in case number SX-2019-CR-329, based on the events that allegedly

took place on or about November 9, 2019 as set forth in the affidavit of Police Officer Michael

Jules, Jr. (hereinafter "Officer Jules"), dated November 20, 2019.[2] The information charged both

Caeser and Charles with the following counts:

Count One. RESSELAH CHARLES and D'MAHRI CHARLES, did when not authorized by law, have, possess, bear, transport, or carry either actually or constructively, open or concealed, a firearm, in violation of Title 14 V.I.C. § 2253(a). (UNAUTHORIZED POSSESSION OF A FIREARM)

Count Two. RESSELAH CHARLES and D'MAHRI CHARLES, when unauthorized by law, did, possess, bear, transport, or carry either actually or constructively, open or concealed, a firearm, under his control in a vehicle, namely a silver Acura TL, bearing license plate number CFJ-632, in violation of Title 14 V.I.C. § 2253(e). (UNAUTHORIZED POSSESSION OF A FIREARM IN A VEHICLE)

Count Three. RESSELAH CHARLES and D'MAHRI CHARLES, when unauthorized by law, did, possess, bear, transport, or carry, either open or concealed, on or about his person, or under his control in a vehicle, a firearm, within one thousand feet of a school, in violation of Title 14 V.I.C. § 2253(f). (UNAUTHORIZED POSSESSION OF A FIREARM IN A VEHICLE WITHIN 1000 FEET OF A PLAYGROUND)

---

[2] A copy of Officer Jules' affidavit was filed with the information. In his affidavit, Officer Jules essentially stated: (i) On November 9, 2019, Officer Jules and his partner were on saturated patrol walking in the vicinity of the cafeteria of the Central High School when they came upon a parked vehicle that Charles and Caeser were sitting in with odor of marijuana emitting from the vehicle. (Jules Aff. ¶¶ 2, 3A, 3B, 3G); (ii) Charles was sitting in the driver's seat and Caeser was sitting in the front passenger's seat. (Jules Aff. ¶¶ 3B, 3G); (iii) Upon walking up to the vehicle, Officer Jules observed a magazine with live ammunition on the floor near the driver's feet in plain view. (Jules Aff. ¶ 3A); (iv) Charles exited the vehicle. (Jules Aff. ¶ 3B); (v) The defendants were placed in handcuffs, and a search of the vehicle was conducted. (Jules Aff. ¶ 3C); (vi) The following items were recovered from the search: a firearm under the driver's seat, a half-burnt marijuana cigarette from the compartment below the radio, a vial containing green leafy substances and several empty vial from a black backpack that belongs to Charles. (Jules Aff. ¶ 3C); (vii) The officers inquired whether the defendants possessed a license to carry firearm in the U.S. Virgin Islands and they said no. (Jules Aff. ¶ 3H); (viii) The defendants were transported to the Wilbur H. Francis Command Police Station. (Jules Aff. ¶ 3E); and (ix) The marijuana cigarette and the green leafy substances were field tested, and both tested positive for marijuana. (Jules Aff. ¶ 3I.)

> Count Four. RESSELAH CHARLES and D'MAHRI CHARLES, when not authorized by law, did possess firearm ammunition, in violation of Title 14 V.I.C. § 2256(a). (POSSESSION OF AMMUNITION)
>
> Count Five. RESSELAH CHARLES and D'MAHRI CHARLES, when unauthorized by law, did, possess, bear, transport, or carry, either open or concealed a firearm, loaded or unloaded, with altered or obliterated identification marks in a public place where persons are gathered, in violation of Title 23 V.I.C. § 481(b). (ALTERATION OF IDENTIFYING MARKS OF A WEAPON)
>
> Count Six. RESSELAH CHARLES and D'MAHRI CHARLES, used or possessed, with intent to use, drug paraphernalia, for the purpose of packaging small qualities of controlled substances, namely marijuana, in violation of Title 19 V.I.C. § 630(a) and § 593(15)(l). (POSSESSION OF A DRUG PARAPHERNALIA)
>
> (Information.)

¶ 3   On July 2, 2020, Caeser filed a motion to suppress. On September 23, 2020, Charles filed a motion for joinder of Caeser's motion to suppress. The People subsequently filed their opposition thereto.

¶ 4   On March 17, 2021, this matter came before the Court for a suppression hearing. The People presented Officer Jules as a witness and the defendants did not present any witnesses. At the end of the suppression hearing, the Court granted Charles' request to present arguments by writing, which the People did not object.

¶ 5   On April 12, 2021, the People filed a motion to dismiss this matter without prejudice against Defendant Caeser, which the Court subsequently granted by an order entered on April 15, 2021 and this matter was dismissed without prejudice against Caeser.

¶ 6   On September 17, 2021, Charles filed a post-suppression hearing brief.

¶ 7   As of the date of this Memorandum Opinion and Order, the People has not filed a post-suppression hearing brief.

## DISCUSSION

### I.    Motion for Joinder

¶ 8    It appears that this motion was never granted. As such, the Court will grant nunc pro tunc Defendant Charles' September 23, 2020 motion for joinder.

### II.    Motion to Amend

¶ 9    At the beginning of the suppression hearing, the People orally moved to amend the information as follows: (i) to include the description and/or identification of the firearm to Counts I, II, III, IV, and V; and (ii) to include the description and/or identification of the drug paraphernalia to Count VI. Neither Caeser nor Charles objected to the People orally moving to amend the information. Thus, the Court ordered the People to proceed with its motion, and the People stated the proposed amendment for each count.[3] Thereafter, the Court granted the People's motion and ordered the People to file the written amended information within five days from the date of the hearing. As of the date of this Memorandum Opinion and Order, the People has not filed a copy of the amended information as ordered. The Court will order the People to file the written amended information again on an expedited basis.

---

[3] The People proposed the following amendments:

    Count I. Add, after "a firearm," to wit, a Taurus model, PT 145 PRO 45, semiautomatic pistol.

    Count II. Add, after "open on concealed, a firearm," namely, Taurus model, PT 145 PRO 45, semiautomatic pistol under his control in a vehicle.

    Count III. Name the firearm as Taurus model, PT 145 PRO 45, semiautomatic pistol.

    Count IV-Add .45 auto cartridges loaded with Hydra-Shok bullets.

    Count V-Add a Taurus model, PT 145 PRO 45, semiautomatic pistol.

    Count VI-Name the drug paraphernalia as five small vials.

    (Hr'g Tr. 16:20-25, 17:1-20, 18:20-25, 19:1-4.)

### III.    Motion to Suppress

¶ 10    In his motion to suppress, which was joined by Charles, Caeser argued that the evidence and statements were obtained as the result of the illegal search on November 9, 2019 and should be suppressed. (Memo.) Caeser made the following assertions in support of his argument: (i) He "denie[d] that anyone ever consented to the search of the car without a warrant, and that there was no reasonable suspicion or probable cause to search and seize him under the facts of the case." (Id., at 3); (ii) The Fourth Amendment protects against unreasonable search and seizure by government. (Id., 3-5); and (iii) "In this case, [Officer Jules] articulated no reason establishing the probable cause to seize Defendant Caeser" and "failed to articulate even a reasonable suspicion to search the vehicle or Defendant Caeser." (Id., at 5.)

¶ 11    In its opposition, the People argued that the Court should deny the motion to suppress. (Opp. 4.) The People made the following assertions in support of its argument: (i) "[A]long with the reasonable suspicion that there may be marijuana in the vehicle, and the magazine of the vehicle being in plain view, the search of the vehicle in this case was lawful and the evidence found in the lawful search of the vehicle should not be suppressed." (Id.); (ii) "The V.I. Supreme Court has determined that since possession of marijuana is still unlawful in the Territory, marijuana is contraband and as such, is 'subject to seizure by law enforcement, regardless of amount.'"[4] (Id.); (iii) "[R]easonable suspicion -- the predicate for a stop and frisk – does not depend on whether the People prove beyond a reasonable doubt that a defendant is 'guilty'; instead, reasonable suspicion is a matter of constitutional and evidentiary concern turning no whether an officer reasonably

---

[4] The People referenced: *People of the V.I. v Looby*, 68 V.I. 683, 694 (V.I. 2018).

marijuana remains unlawful in this Territory, officers may establish reasonable suspicion to conduct a *Terry* stop if the officer relied upon his or her experience and training to detect the presence of that contraband."[12] 68 V.I. at 698. Based on the totality of the circumstances, the Court finds that an officer trained to identify the odor of marijuana and experienced in making drug arrests possessed reasonable suspicion to approach and conduct an investigatory stop, or *Terry* stop, after the officer smelled marijuana. As such, the Court finds that the *Terry* stop was lawful and permissible under the Fourth Amendment.

---

(Hr'g Tr. 10:1-3); and (ix) The two male individuals were the only individuals in the parking lot at the time they were doing the walkthrough. (Hr'g Tr. 10:4-5.)

[12] In *Looby*, the Virgin Islands Supreme Court explained:

> Further, although a person in possession of an ounce or less of marijuana may now avoid criminal penalization, the presence or absence of criminal penalization does not disturb our constitutional frisk and seizure inquiry. This is because reasonable suspicion — the predicate for a valid stop and frisk — does not depend on whether the People proved beyond a reasonable doubt that a defendant is "guilty"; instead, reasonable suspicion is a matter of constitutional and evidentiary concern turning on whether an officer reasonably concludes that evidence of contraband or of a crime may be present. *Gumbs*, 64 V.I. at 508. Notwithstanding enactment of Act 7700, the scent of marijuana (which remains contraband subject to seizure in this Territory) alone may be sufficient to establish reasonable suspicion or even "probable cause" to conduct further investigation into possible criminal acts or evidence of contraband. *United States v. Ramos*, 443 F.3d 304, 308, 47 V.I. 755 (3d Cir. 2006) ("It is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion but probable cause."); *United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004) ("[T]he odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place."); *United States v. White*, 593 F.3d 1199, 1203 (11th Cir. 2010) ("[T]he smell of marijuana alone may provide a basis for reasonable suspicion."); *United States v. Elkins*, 300 F.3d 638, 660 (6th Cir. 2002); *United States v. Kerr*, 876 F.2d 1440, 1445 (9th Cir. 1989) (noting that "the presence of the odor of contraband may itself be sufficient to establish probable cause") (citations omitted); *United States v. Russell*, 670 F.2d 323, 325, 216 U.S. App. D.C. 165 (D.C. Cir. 1982) (stating, " '[p]lain view,' we think it safe to say, encompasses 'plain touch,' and probably 'plain smell' as well"). Therefore, we agree with the Superior Court that because possession of marijuana remains unlawful in this Territory, officers may establish reasonable suspicion to conduct a *Terry* stop if the officer relied upon his or her experience and training to detect the presence of that contraband.

> *Looby*, 68 V.I. at 697-98.

Charles referenced a plethora of cases in his brief to support his motion but failed to address *Looby*, which was referenced by the People in their opposition.

### b. Whether the Terry Stop Transformed into a De Facto Arrest

¶ 19    While the Court finds the *Terry* stop was lawful, the Court must now address Charles' contention that the *Terry* stop transformed into a de facto arrest when he was handcuffed and was not free to go.

¶ 20    "It is well established that during an investigative stop, police officers may take measures reasonably necessary to protect themselves and maintain the status quo. Consequently, [t]here is no per se rule that pointing guns at people, or handcuffing them, constitutes an arrest." *Blyden*, 53 V.I. at 648 (internal quotation marks omitted) (citations omitted). In *Blyden*, the Virgin Islands Supreme Court found the fact that "the police immediately drew their weapons, ordered Blyden to the ground, and handcuffed him did not transform his detention into an illegal arrest if the officers had reasonable suspicion "that criminal activity [was] afoot and that the persons with whom [they were] dealing [was] armed and presently dangerous." 53 V.I. at 648-49 (quoting *Terry*, 392 U.S. at 27, 30 ("[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.").

¶ 21    Through the testimony of Officer Jules, the People established that Officer Jules observed Charles, who was sitting in the driver's seat, moving like he was placing something underneath his seat, that upon Officer Jules shining his flashlight on the floor area of the vehicle, Officer Jules saw in plain view a black magazine with live ammunition in it in the floor area of the driver's seat, that Charles exited the vehicle of his own volition, that Officer Jules detained Charles in handcuffs, that Officer Jules advised Charles of his rights, that Officer Jules asked Charles some questions

and Charles responded, that one of the questions asked was whether Charles has a license to carry a firearm in the U.S. Virgin Islands and Charles said no, and that Officer Jules detained the defendants "just to be on the safe side" because based on his experience, a magazine comes with a firearm.[13] Under these circumstances, the Court concludes that the officer had reasonable grounds to believe that the defendants were likely armed and dangerous. As a result, the officers' actions in handcuffing the defendants did not transform the initial stop to an arrest requiring probable cause. *See Blyden*, 53 V.I. at 648 ("It is well established that during an investigative stop, police officers may take measures reasonably necessary to protect themselves and maintain the status quo."); *see also, People of the V.I. v. Pemberton*, 71 V.I. 251, ¶ 46 (V.I. Super. Ct. Aug. 30, 2019) ("The use of handcuffs does not automatically transform a *Terry* stop into an arrest, provided it is warranted by the circumstances – especially when officer safety is at issue.").

---

[13] At the suppression hearing, Officer Jules further testified: (i) When he approached the vehicle, he observed Charles, who was sitting in the driver's seat, moving like he was placing something underneath his seat. (Hr'g Tr. 10:6-16); (ii) When he approached the vehicle and was by the driver's side fender, he turned on his flashlight to illuminate the area. (Hr'g Tr. 10:17-25); (iii) He shone the flashlight as he was approaching to make sure he could see there were other occupants in the car. (Hr'g Tr. 22:14-18); (iv) He illuminated the floor area of the vehicle and saw "a black magazine with live ammunition in it." (Hr'g Tr. 11:2-6); (iv) The black magazine with the live ammunition was on the floor area of the driver's seat in plain view; it was not under the seat. (Hr'g Tr. 23:17-25, 28:12-17); (v) Charles exited the vehicle of his own volition. (Hr'g Tr. 11:10-11); (vi) He asked Charles if "he had or ever had a license to possess a firearm in the Virgin Islands" and Charles said no and "That's – it's not mine." (Hr'g Tr. 11:12-17); (v) He asked Caesar if had or ever had a license to possess a firearm in the Virgin Islands and Caesar said no. (Hr'g Tr. 12:16-17); (vi) He advised Charles of his rights and asked Charles some questions, which Charles answered. (Hr'g Tr. 25:3-14); (v) Both defendants were detained and placed in handcuffs. (Hr'g Tr. 30:3-4); (vi) He advised the defendants that he was detaining them and that they are not under arrest. (Hr'g Tr. 40:10-19); (vii) He detained the defendants "just to be on the safe side" because "normally with a magazine, based on [his] experience, a magazine comes with a firearm." (Hr'g Tr. 40:3-9.)

When the Court asked Officer Jules to clarify the order of the events, Officer Jules clarified that after he saw the magazine with the live rounds in the vehicle, he advised the defendants that he was going to detain them, then he placed them in handcuffs, then he asked the defendants if they had a license to carry a firearm in the U.S. Virgin Islands and they both said no. He explained that he asked them "in advance if they have a license to carry a firearm" because "when you have a magazine, a magazine is normally accompanied with a firearm" and "[s]o [he] asked them in advance if they have a license to carry a firearm." (Hr'g Tr. 35:18-36:15.)

### c. Whether the Terry Frisk was Lawful

¶ 22    A *Terry* frisk is a limited search done "only for detection of a dangerous weapon in the interest of officer security" and "[i]t by no means authorizes a search for contraband, evidentiary material, or anything else in the absence of probable cause and reasonable grounds to arrest." *People of the V.I. v. Bethel*, 2017 V.I. LEXIS 121, at *9 (Super. Ct. Aug. 3, 2017) (quoting *Terry*, 392 U.S. at 26-27). "The search for weapons approved in *Terry* consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault [against the officer]." *Blyden*, 53 V.I. at 650 (quoting *Sibron v. New York*, 392 U.S. 40, at 65 (1968)).

¶ 23    In this case, there was no mention of the officer patting down Charles for a protective search. Instead, Officer Jules testified that the vehicle and Charles' backpack inside the vehicle were searched after the defendants were detained. However, the search of the vehicle and Charles' backpack inside the vehicle exceeded the scope of the search sanctioned by *Terry* since it went beyond the "limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault [against the officer]." *Blyden*, 53 V.I. at 650. As such, while there is nothing for the Court to decide as to the lawfulness of the *Terry* frisk—since there was no pat down of Charles—the Court must determine whether the search of the vehicle and Charles' backpack inside the vehicle was lawful.

### d. Whether the Search of the Vehicle and Charles' Backpack Inside the Vehicle was Lawful

¶ 24    In *Arizona v. Gant*, the United Supreme Court explained that "[w]here no arrest is made, we have held that officers may search the car if they reasonably believe "the suspect is dangerous and . . . may gain immediate control of weapons," *Michigan v. Long*, 463 U.S. 1032, 1049 (1983),

because "[i]n the no-arrest case, the possibility of access to weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is completed." 556 U.S. 332, 352 (2009). In other words, under *Long*, if an officer possesses a reasonable suspicion that a suspect is armed and dangerous, he may conduct a brief protective sweep of the suspect's vehicle, but the search is "limited to those areas in which a weapon may be placed or hidden."[14] *Long*, 463 U.S. at 1049. On the other hand, "[i]f there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 456 U.S. 798, 820-21 (1982) authorizes a search of any area of the vehicle in which the evidence might be found." *Arizona v. Gant*, 556 U.S. 332, 347, (2009); *see Browne v. People of the V.I.*, 56 V.I. 207, 217 (V.I. 2012) ("Under the automobile exception to the warrant requirement, law enforcement may seize and search an automobile without a warrant if probable cause exists to believe it contains evidence of criminal activity."). "Probable cause exists when, under the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime will be found in a particular place" and "[t]he test of reasonableness cannot be fixed by *per se* rules; each case must be decided on its own facts." *Browne*, 56 V.I. at 217 (internal quotation marks omitted) (citations omitted). In *Ross*, the United States Supreme Court explained:

---

[14] The *Long* court explained:

> Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. See *Terry*, 392 [*1050] U.S., at 21. "[The] issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*, at 27. If a suspect is "dangerous," he is no less dangerous simply because he is not arrested.

> 463 U.S. at 1049-50.

> The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found…If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.

456 U.S. at 824-25.

¶ 25    Through the testimony of Officer Jules, the People established that the vehicle and a black backpack in the vehicle that belongs to Charles were searched after the defendants were detained, that the defendants did not consent to the search, that the vehicle was searched first and resulted in a firearm recovered under the driver's seat and a burnt cigarette recovered underneath the stereo, that Charles backpack was searched thereafter and resulted in five small vials (four empty; one contained green leafy substances), that the burnt cigarette turned out to be a marijuana cigarette and the green leafy substances turned out to be marijuana, and that Charles made some statements after being advised of his rights.[15]

As noted above, Officer Jules testified that he is trained to identify the odor of marijuana, that he personally smelled marijuana when he came up to the vehicle, and that the two male individuals were the only individuals in the parking lot at the time Officer Jules and his partner were doing the walkthrough. Under these circumstances, Officer Jules had probable cause that contraband or evidence of a crime will be found in the vehicle. *See Looby*, 68 V.I. at 697

---

[15] At the suppression hearing, Officer Jules further testified: (i) After he detained Charles and placed Charles in handcuffs, he advised Charles of his rights, then he asked Charles some questions and Charles answered his questions. (Hr'g Tr. 25:5-14.); (ii) One of the questions he asked Charles was whether Charles has a license to carry a firearm in the U.S. Virgin Islands and Charles said no. (Hr'g Tr. 35:18-36:15); (iii) After the defendants both said they did not have a license to carry a firearm in the U.S. Virgin Islands, the vehicle was searched. (Hr'g Tr. 19:19-25, 30:11-16); (iv) A black backpack that belongs to Charles was also searched. (Hr'g Tr. 20:5-13); (v) The officers did not get permission from the defendants to the search of the vehicle. (Hr'g Tr. 30:4-22); (vi) A firearm was recovered under the driver's seat of the vehicle, a burnt cigarette was recovered underneath the stereo, and five small vials (four empty; one contained green leafy substances) were recovered from the backpack. (Hr'g Tr. 19:22-20:3); (vii) Subsequent field test revealed that the green leafy substances were marijuana. (Hr'g Tr. 20:14-16); (viii) The burnt cigarette turned out to be a marijuana cigarette. (Hr'g Tr. 20:17-21:1.)

("Notwithstanding enactment of Act 7700, the scent of marijuana (which remains contraband subject to seizure in this Territory) alone may be sufficient to establish reasonable suspicion or even "probable cause" to conduct further investigation into possible criminal acts or evidence of contraband."). Under *Ross*, the officers were permitted to search every part of the vehicle and its contents that may conceal evidence of criminal activity, including Charles' backpack in the vehicle. While conducting a legitimate search of the vehicle and Charles' backpack, the officers recovered the firearm from under the driver's seat, the marijuana cigarette from underneath the stereo, and the five small vials (four empty; one contained green leafy substances) from Charles' backpack. The Court finds no need to suppress the evidence recovered.

Even *assuming arguendo* that the scent of marijuana was insufficient to establish probable cause in this instance, the Court still finds no need to suppress the evidence recovered. As noted above, Officer Jules testified that he personally observed in plain view a black magazine with live ammunition, that based on his experience, a magazine comes with firearm, that the defendants were not arrested but detained in handcuffs out of concerns for the officer's safety. Under these circumstances, the Court finds that the officers were permitted under *Long* to conduct a brief protective sweep of the vehicle limited to those areas in which a weapon may be placed or hidden—to wit, Officer Jules had reasonable suspicion that the defendants were likely armed and dangerous and may gain immediate control of weapons since the defendants were not arrested at that time and thus, the possibility of access to weapons in the vehicle existed once the interrogation was completed and the defendants were allowed to return to the vehicle. As such, the search of the vehicle under the driver's seat was justified since it is an area in which a weapon may be placed or hidden. Once the firearm was recovered, coupled with the fact that both defendants had already

indicated that they did not have a license to carry a firearm in the U.S. Virgin Islands, Officer

Jules' reasonable suspicion ripened into probable cause to believe that the vehicle contained

evidence of criminal activity. *See Browne*, 56 V.I. at 217. Because the officer's reasonable

suspicion had ripened into probable cause at that point, *Ross* permitted the search of every part of

the vehicle and its contents that may conceal evidence of criminal activity, including Charles'

backpack in the vehicle. While conducting a legitimate search of the vehicle and Charles'

backpack, the officers recovered the marijuana cigarette from underneath the stereo and the five

small vials (four empty; one contained green leafy substances) from Charles' backpack. In *Long*,

the United States Supreme Court stated that "[i]f, while conducting a legitimate *Terry* search …

the officer should, as here, discover contraband other than weapons, he clearly cannot be required

to ignore the contraband, and the Fourth Amendment does not require its suppression in such

circumstances.'" *Long*, 463 U.S. at 1050; *see Gumbs v. People of the V.I.*, 64 V.I. 491, 509 (2016).

Similarly, in this instance, the Court finds no reason for the officers to ignore the contraband

discovered while conducting a legitimate search and that the Fourth Amendment does not require

the suppression of the marijuana cigarette and the five small vials (four empty; one contained green

leafy substances).

### d. *Whether the Statements Made by Charles are Admissible*

¶ 26    The Court must now address Charles' contention that he made statements without being

given his *Miranda*[16] rights. "The requirement to administer warnings in advance only attaches to

---

[16] In *Blyden*, the Virgin Islands Supreme Court explained,

> In *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966), the United States Supreme Court held that:
>
> when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise

statements which are the product of custodial interrogation." *Castillo*, 59 V.I. at 265. Assuming, without determining, that the statements Charles made in response to Officer Jules' questions, while detained in handcuffs by the vehicle, stemmed from custodial interrogation, the People established through the testimony of Officer Jules that Charles made the statements after being advised of his rights—to wit, Officer Jules advised Charles of his rights before he asked Charles several questions to which Charles made statements in response thereto.[17] There is nothing in the record to indicate that Charles did not understand his *Miranda* rights. "[A] suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent by making an uncoerced statement to the police." *Blyden*, 53 V.I. at 662 (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010)). Accordingly, the Court finds that these statements do not need be suppressed as violative of *Miranda*.

## CONCLUSION

Based on the foregoing, it is hereby:

**ORDERED** that Charles's motion for joinder is **GRANTED NUNC PRO TUNC**. It is further:

---

of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.

53 V.I. at 661 n.19.

[17] *See supra*, footnotes 13, 14.

**ORDERED** that, **within five days from the date of entry of this Memorandum Opinion and Order**, the People shall file a first amended information consistent as granted at the suppression hearing. **And** it is further:

**ORDERED** that Charles' motion to suppress all the evidence and statements, as a joined motion to Caeser's motion, is **DENIED**.

**DONE and so ORDERED** this ____16^th____ day of March, 2023.

**ATTEST:**
Tamara Charles
Clerk of the Court

By: _____
Court Clerk Supervisor II

Dated: ____3/16/2023____

HAROLD W.L. WILLOCKS
**Senior Sitting Judge of the Superior Court**